**UNITED STATES of America, Plaintiff–Appellant and Cross–Appellee,**

v.

**Paul D. WOOD, Defendant–Appellee and Cross–Appellant.**

**Nos. 90–2184, 91–2007 and 91–2008.**

United States Court of Appeals, Tenth Circuit.

Feb. 26, 1992.

As Amended on Denial of Rehearing March 17, 1992.

Linda A. Akers, U.S. Atty., and Wallace Kleindienst, Sp. Asst. U.S. Atty., Phoenix, Ariz. (William Lutz, U.S. Atty., Albuquerque, N.M., with them on the brief), for plaintiff-appellant and cross-appellee.

David L. Norvell, Albuquerque, N.M., for defendant-appellee and cross-appellant.

Before BALDOCK, McWILLIAMS and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

A two-count indictment charged Defendant-appellee, Paul D. Wood, with making false statements to FBI agents, 18 U.S.C. § 1001, and obstruction of justice. *Id.* § 1503. Both counts were based on alleged false statements Defendant made to FBI agents who, on behalf of a federal grand jury sitting in Arizona, were investigating allegations of corruption against Peter MacDonald, the former Chairman of the Navajo Nation.

At the close of the government's case, Defendant moved for a judgment of acquittal. The district court raised the issue of whether count 2—the obstruction of justice charge—was deficient for failing to identify the false statements which were alleged to have obstructed justice. At the court's suggestion, Defendant moved to dismiss count 2 "for failure to adequately state a crime" under 18 U.S.C. § 1503. IV

R. 507. The court granted Defendant's motion.[1]

The trial continued on count 1—the false statement charge. The jury was instructed that, in order to find Defendant guilty, it must unanimously agree that only one of the six statements alleged in the indictment was false. The jury asked whether it was required to make a finding on the remaining false statements alleged in the indictment once it had unanimously agreed on one. The district court instructed the jury that if it unanimously agreed that one of the statements was false, it need not reach the other statements but that it should inform the court by special verdict on which statement it based its finding.[2] The jury returned a guilty verdict on count 1 based on the first statement.

After the jury was discharged, defense counsel discovered an easel and writing pad containing government counsel's notes in the jury room. The notes were made during examination of witnesses in order to assist the jury in following the witnesses' testimony. Page twenty of the notes highlighted four dates and events which were significant to the government's case and which corresponded to a timeline that the government counsel prepared and used during closing argument. The district court had earlier denied the jury's request to view the timeline during deliberation. Defendant moved for a judgment of acquittal on count 1 based on insufficient evidence and, alternatively for a new trial due to the jury's exposure to the notes during deliberation. The district court denied Defendant's motion for a judgment of acquittal, but granted Defendant's motion for a new trial.

The government appeals the district court's post-verdict order granting Defendant a new trial on count 1. Defendant cross appeals the order that granted him a new trial but denied his motion for a judgment of acquittal contending that double jeopardy bars retrial on count 1.[3] The government also appeals the district court's mid-trial order dismissing count 2.

## I.

### A.

■ The government's appeal of the district court's order granting Defendant a new trial on count 1 is properly within our jurisdiction under 18 U.S.C. § 3731.[4] Although § 3731 limits government appeals of new trial orders to cases in which the Double Jeopardy Clause does not prohibit further prosecution, Defendant's double jeopardy claim, raised in his cross-appeal, would not bar his retrial on count 1. "[W]hen a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal that ruling without running afoul of the Double Jeopardy Clause." *United States v. Wilson*, 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026, 43 L.Ed.2d 232 (1975). *See also United States v. DiFrancesco*, 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980). The Supreme Court has reasoned that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *Wilson*, 420 U.S. at 344, 95 S.Ct. at 1022 (footnote omitted). The government's appeal, in contrast to Defen-

---

**1.** The district court's written order stated that it "sua sponte ... dismissed Count II of the Indictment as being fatally defective in that Count II did not specify what the alleged false, fictitious or fraudulent statements and representations were." X R. doc. 66.

**2.** The district court also instructed the jury that if it found one of the statements to be true, it must then address all of the statements and could acquit Defendant only if it found all of the statements to be true.

**3.** The government moved to dismiss Defendant's cross-appeal for lack of jurisdiction. In an ear-

lier opinion, we denied the government's motion. *United States v. Wood*, 950 F.2d 638, 643 (10th Cir.1991).

**4.** Section 3731 provides, in relevant part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment ... or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731.

dant's cross-appeal, does not implicate the Double Jeopardy Clause's proscription of successive prosecutions because the government seeks to reinstate the jury's guilty verdict on count 1. Therefore, our jurisdiction is proper under § 3731.

## B.

■ We review the district court's grant of Defendant's motion for a new trial for an abuse of discretion. *United States v. Pinelli*, 890 F.2d 1461, 1481 (10th Cir.1989), *cert. denied*, 495 U.S. 960, 110 S.Ct. 2568, 109 L.Ed.2d 750 (1990). In determining whether the jury's exposure to government counsel's notes during deliberation warranted a new trial, the proper inquiry for the district court was whether there was the "slightest possibility" that it affected the verdict. *Johnston v. Makowski*, 823 F.2d 387, 389–91 (10th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988); *United States v. Marx*, 485 F.2d 1179, 1184 (10th Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974).

■ The government concedes that the presence of government counsel's notes in the jury room was improper. Nevertheless, the government contends that Defendant was not prejudiced because the jury did not consider the notes while deliberating. At a post-trial evidentiary hearing, the jury foreman testified that the jury did not look at the notes but rather turned immediately to a blank page in the back to make its own notations. However, the jury foreman was not in the room during the entire deliberation. Further, defense counsel testified that when he discovered the easel and writing pad in the jury room, it was open to page twenty which highlighted four dates and events significant to the government's case. During deliberations, the jury had requested a timeline prepared and used by the government during its closing argument and which also highlighted the four dates and events noted on page twenty, but the district court refused to provide it. The district court acted within its discretion in finding the jury foreman's testimony inconclusive, and the remaining circumstances indicate that the district court could reasonably find that jury was exposed to the extraneous material. Therefore, the district court did not abuse its discretion in granting the new trial.

Additionally, the government argues that because the material was intertwined inextricably with properly admitted evidence, even if the jury considered the notes during its deliberations, Defendant was not prejudiced. The government's reliance on *Pinelli*, which held that it was not an abuse of discretion to deny a motion for a new trial due to the jury's exposure to extraneous materials during deliberation, 890 F.2d at 1473, is inapposite and indeed supports the proposition that "[t]he trial judge is uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature." *United States v. Bagnoriol*, 665 F.2d 877, 885 (9th Cir.1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). *Cf. United States v. Renteria*, 625 F.2d 1279, 1284 (5th Cir. 1980) (remanding to district court for determination of whether extrinsic material was prejudicial). Similarly, the government's citation to cases which held that the jury's exposure to extrinsic material was harmless error, *see Hughes v. Borg*, 898 F.2d 695, 700 (9th Cir.1990); *Lacy v. Gardino*, 791 F.2d 980, 987 (1st Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986); *United States v. Warner*, 428 F.2d 730, 737 (8th Cir.), *cert. denied*, 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970), is unpersuasive given that the district court has already determined that there was a slight possibility of prejudice and our deferential standard of review. The cases applying a "reasonable possibility" standard to the district court's determination of prejudice, *see United States v. Guida*, 792 F.2d 1087, 1092 (11th Cir.1986); *Llewellyn v. Stynchcombe*, 609 F.2d 194, 195 (5th Cir. 1980), are also unpersuasive because this circuit applies the less exacting "slightest possibility" standard.

The district court was particularly concerned about the jury's exposure to page twenty which detailed the events during

"the critical time period in this case." The jury's request for the timeline prepared and used by the government during its closing argument is persuasive evidence that the sequence of events was critical to its verdict. Thus, we cannot say that the district court abused its discretion when it found that "the Government's closing argument was essentially in the room with the jury."

## II.

■ Defendant contends that the Double Jeopardy Clause bars his retrial on count 1. First, Defendant argues that the evidence at the first trial was insufficient as a matter of law; therefore, his retrial on count 1 would violate the Double Jeopardy Clause.[5] Second, Defendant contends that because the jury's special verdict on count 1 was based solely on the first of six alleged false statements, he was implicitly acquitted on the remaining five false statements; therefore, the Double Jeopardy Clause dictates that his retrial on count 1 must be limited to the first false statement.

## A.

Defendant's first argument presupposes that appellate review of the sufficiency of the evidence is a necessary component of his right against being twice put in jeopardy for the same offense. The government argues that the Double Jeopardy Clause does not bar Defendant's retrial on count 1 regardless of the sufficiency of the evidence; therefore, a sufficiency review is not necessary to protect Defendant's double jeopardy rights.

The Double Jeopardy Clause is an absolute bar against a subsequent prosecution for the same offense following an acquittal

from a jury verdict, *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), a determination by the trial judge that the evidence was insufficient as a matter of law, *Smalis v. Pennsylvania*, 476 U.S. 140, 144, 106 S.Ct. 1745, 1748, 90 L.Ed.2d 116 (1986), or a similar determination by a reviewing court. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). Indeed, we "attach [such] particular significance to an acquittal," *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978), that it "bars retrial even if based on legal error." *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984). *See also Sanabria v. United States*, 437 U.S. 54, 68–69, 98 S.Ct. 2170, 2180–81, 57 L.Ed.2d 43 (1978); *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962).

However, Defendant has not been acquitted. The jury found Defendant guilty on count 1. The district court, in denying Defendant's motion for a judgment of acquittal, found the evidence to be sufficient. In seeking review of the District Court's order denying his motion for a judgment of acquittal, Defendant seeks the legal judgment which would bar his reprosecution.

The Double Jeopardy Clause "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction...." *United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). *See also Ball*, 163 U.S. at 671–72, 16 S.Ct. at 1195. In *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), the Supreme Court reaffirmed this principle, relying on a theory of continuing jeopardy.[6] "[T]he

---

5. Defendant framed the issue by asserting that the district court erred in denying his motion for a judgment of acquittal. In our earlier order denying the government's motion to dismiss Defendant's cross-appeal as interlocutory, we held that Defendant had raised a colorable double jeopardy claim; therefore, our jurisdiction was proper under the collateral order doctrine. *Wood*, 950 F.2d at 642. *See also Richardson v. United States*, 468 U.S. 317, 322, 104 S.Ct. 3081, 3084, 82 L.Ed.2d 242 (1984); *Abney v. United*

*States*, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977). We must, therefore, review Defendant's insufficiency claim in light of its double jeopardy implications as this is the basis of our jurisdiction over Defendant's cross-appeal.

6. The concept of continuing jeopardy has its origins in Justice Holmes dissent in *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). In *Kepner*, the Court held

concept of continuing jeopardy ... has application where criminal proceedings against an accused have not run their full course." *Id.* at 326, 90 S.Ct. at 1759. According to *Price*, "the concept of continuing jeopardy" was "effectively formulated" and "implicit" in *Ball* which recognized that the Double Jeopardy Clause prohibited "being twice put in jeopardy" as opposed to "being twice punished" yet nonetheless held that a defendant could be retried after his conviction was reversed on appeal. *Id.* 398 U.S. at 326, 329, 90 S.Ct. at 1759, 1761.

The government relies on the concept of continuing jeopardy arguing that because there has been no event that has terminated Defendant's original jeopardy, he has no double jeopardy claim regardless of the sufficiency of the evidence. In *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), the Supreme Court held that under Massachusetts' two-tier system for adjudicating minor criminal offenses,[7] the Double Jeopardy Clause did not require a sufficiency review following the first-tier bench trial. *Id.* at 303, 104 S.Ct. at 1810. Rejecting

the defendant's argument, based on *Burks*, that his de novo jury trial was barred by the Double Jeopardy Clause if the evidence at the bench trial was insufficient, the Court stated that the defendant's "conceptual difficulty ... is that he has not been acquitted; he simply maintains that he ought to have been." *Id.* 466 U.S. at 307, 104 S.Ct. at 1813. The Court relied on "the concept of 'continuing jeopardy' " and held that the defendant had not identified any stage of the proceedings that had terminated jeopardy but rather was "faced with the unreversed determination of the bench-trial judge ... that the prosecution had met its burden of proof."[8] *Id.* at 309, 104 S.Ct. at 1813. The Court stated that a "claim of evidentiary failure and a legal judgment to that effect therefore have different consequences under the Double Jeopardy Clause." *Id.*

The government suggests that the present case is indistinguishable from *Lydon*. However, *Lydon* must be considered in the context of the two-tier system under review. The *Lydon* Court stated that *Lud-*

---

that a section of the act establishing a civil government in the Philippine Islands, then a United States territory, Act of July 1, 1902, § 5, 32 Stat. 691, which contained language identical to that of the Double Jeopardy Clause, effectively repealed an earlier military order giving the territorial government a right to appeal a judgment of acquittal in a criminal case. 195 U.S. at 133–34, 24 S.Ct. at 806. In dissent, Justice Holmes recognized that the Court's opinion would be used to interpret the Double Jeopardy Clause, and his disagreement with the majority was premised on the concept of continuing jeopardy:

> [L]ogically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy from its beginning to the end of the cause. Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case.

*Id.* at 134, 24 S.Ct. at 806 (Holmes, J., dissenting). Although "the law of double jeopardy is closer to the view of Holmes," than it has been in earlier years, *United States ex rel. Young v. Lane*, 768 F.2d 834, 841 (7th Cir.), *cert. denied*, 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 300 (1985), this "view has never been adopted by a majority of [the] Court." *Breed v. Jones*, 421

U.S. 519, 541, 95 S.Ct. 1779, 1791, 44 L.Ed.2d 346 (1975) (internal quotations omitted).

7. Under Massachusetts' two-tier system, a defendant could choose between a bench trial and a jury trial. If he chose a jury trial and was convicted, he could pursue the normal avenues of appellate review. If he chose a bench trial and was convicted he had an absolute right to a trial de novo before a jury; however, he was precluded from asserting error at the bench trial to obtain reversal. *Lydon*, 466 U.S. at 297, 104 S.Ct. at 1807.

8. Justice White's opinion in *Lydon* was supported by Justices Rehnquist and Blackmun in its entirety. Justice Powell and Chief Justice Burger concurred in Justice White's disposition of the defendant's double jeopardy claim on the merits despite their belief that there was no federal habeas corpus jurisdiction over defendant's claim. 466 U.S. at 327–28, 104 S.Ct. at 1823 (Powell, J., concurring). Justices Brennan, Marshall, Stevens, and O'Connor all concurred in the judgment, but none adopted the continuing jeopardy rationale, and Justice Brennan's opinion, in which Justice Marshall joined, strongly criticized it. *See id.* at 313, 315–19, 104 S.Ct. at 1815, 1816–19 (Brennan, J., concurring); *id.* at 328, 104 S.Ct. at 1823 (Stevens, J., concurring); *id.* at 337, 104 S.Ct. at 1828 (O'Connor, J., concurring).

*wig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), which rejected a double jeopardy challenge to Massachusetts' earlier two-tier system, was "dispositive" on the double jeopardy issue. *Lydon*, 466 U.S. at 305, 104 S.Ct. at 1811. Under the two-tier system, a defendant could "wholly avoid the consequences of the first-tier trial" by proceeding directly to a jury trial. *Id.* at 312 n. 9, 104 S.Ct. at 1815 n. 9. In the present case, Defendant could not "wholly avoid the consequences" of the first trial, but rather was compelled to endure them. In *Lydon*, a defendant who opted for the first-tier bench trial had an absolute right to a de novo jury trial; therefore, he "was in 'jeopardy' only in a theoretical sense" at the first-tier bench trial. *Id.* at 310, 104 S.Ct. at 1814. By contrast, Defendant was in jeopardy in a very real sense during the first trial. Furthermore, the *Lydon* Court was not content to rely exclusively on the continuing jeopardy principle. Several features of the two-tier system led the Court to reason that it did "not constitute 'governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect.'" *Id.* (quoting *Scott*, 437 U.S. at 91, 98 S.Ct. at 2193). These factors suggest that *Lydon's* continuing jeopardy analysis does "not satisfactorily explain why [Defendant] should be deprived of the constitutional protection against a second trial." *Breed v. Jones*, 421 U.S. 519, 541, 95 S.Ct. 1779, 1791, 44 L.Ed.2d 346 (1975) (declining to apply continuing jeopardy principle in holding that prosecution of defendant as adult after adjudicatory finding in juvenile court violated Double Jeopardy Clause).

In *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), the defendant sought review of the district court's denial of his motion for a judgment of acquittal following the declaration of a mistrial due to a hung jury. The defendant claimed that the Double Jeopardy Clause barred retrial if there was insufficient evi-

dence to convict at the first trial. *Id.* at 322–23, 104 S.Ct. at 3084. Declining to review the sufficiency of the evidence, the Supreme Court issued its broadest pronouncement of the continuing jeopardy principle: "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Id.* at 325, 104 S.Ct. at 3086 (citing *Lydon*, 466 U.S. at 308–10, 104 S.Ct. at 1813–14; *Price*, 398 U.S. at 329, 90 S.Ct. at 1761). The Court "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy" and held that "[r]egardless of the sufficiency of the evidence at [the defendant's] first trial, he ha[d] no valid double jeopardy claim to prevent his retrial." *Id.* 468 U.S. at 326, 104 S.Ct. at 3086 (footnote omitted).

 *Richardson's* broad language suggests that an event which terminates jeopardy is a condition precedent to a defendant's assertion of a double jeopardy claim. However, *Richardson* gives us little guidance on what events, other than an acquittal, terminate jeopardy. While *Price* stated that "the concept of continuing jeopardy ... has application where criminal proceedings against an accused have not run their full course," 398 U.S. at 326, 90 S.Ct. at 1759, this has not yet become the litmus test for double jeopardy claims. The Double Jeopardy Clause precludes a retrial following the declaration of a mistrial which was not due to a manifest necessity, *see United States v. Crotwell*, 896 F.2d 437, 439 (10th Cir.1990), yet it is inconsistent to suggest that criminal proceedings ending in a mistrial not due to a manifest necessity "run their full course" while proceedings in which a mistrial is a manifest necessity do not. Additionally, we continue to afford sufficiency reviews on direct appeal after determining that reversal is required due to legal error in order to protect a defendant's double jeopardy rights,[9] *see United*

---

**9.** The Supreme Court has suggested that a sufficiency review is part of an appellate court's "obligations to enforce applicable ... laws."

*Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982). *See also Lydon*, 466 U.S. at 322, 104 S.Ct. at 1820 (Brennan, J.,

*States v. Daily,* 921 F.2d 994, 1011 (10th Cir.1990), *cert. denied,* ——— U.S. ———, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991); *United States v. Doran,* 882 F.2d 1511, 1526 (10th Cir.1989), yet this practice is inconsistent with the continuing jeopardy principle suggested in *Richardson* because a conviction reversed for legal error has not run its full course. *Price,* 398 U.S. at 326, 90 S.Ct. at 1759. Consequently, *Richardson's* failure to elaborate on what events terminate jeopardy or when the continuing jeopardy principle is applicable makes us reluctant to mechanically apply its holding to a different set of facts. *Cf. Breed,* 421 U.S. at 534, 95 S.Ct. at 1788 (distinguishing between "concept" and "conclusion" of "continuing jeopardy" and reasoning that "a more satisfactory explanation [for double jeopardy analysis] lies in an analysis of the respective interests involved").

Defendant suggests that the guilty verdict returned by the jury terminated jeopardy. Certainly a final judgment of conviction, unreversed on appeal, will terminate jeopardy.[10] *See Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990) (Double Jeopardy Clause barred subsequent prosecution in which government was required to prove conduct for which the defendant had already been prosecuted). *See also Richardson,* 468 U.S. at 327, 104 S.Ct. at 3087 (Brennan, J., dissenting) ("under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would "terminate" jeopardy and thereby bar retrial"). However, Defendant is not before us on a final judgment of conviction. Rather, he is before us on an interlocutory appeal seeking to protect an asserted double jeopardy right which is itself dependent on our review of the sufficiency of the evidence. A defendant may not bring additional claims as part of an interlocutory appeal based on a

double jeopardy claim. *See Abney v. United States,* 431 U.S. 651, 663, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977). Our review of the sufficiency of the evidence would violate this principle. Therefore, the continuing jeopardy principle is applicable when a defendant brings an interlocutory appeal which is dependent on another legal claim.

A guilty verdict by a jury which is set aside by the district court on a motion by the defendant does not terminate jeopardy. The Supreme Court has indicated that one of the interests underlying the continuing jeopardy principle is a "limited waiver," *Price,* 398 U.S. at 329 n. 4, 90 S.Ct. at 1761 n. 4, and this is particularly significant to the present case. Defendant's asserted double jeopardy claim rests on his right not to be tried twice for the same offense, yet Defendant asked for the new trial. Had the district court granted a motion by Defendant for a mistrial prior to the jury returning a verdict, the Double Jeopardy Clause would not bar a retrial. *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) ("a motion by the defendant for a mistrial is ordinarily assumed to remove any barrier to reprosecution"). *See also Scott,* 437 U.S. at 93, 98 S.Ct. at 2194; *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *United States v. Poe,* 713 F.2d 579, 583 (10th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984). Further, had the District Court declared a mistrial due to a "manifest necessity" prior to the jury returning a verdict, the Double Jeopardy Clause would not bar his retrial. *See Illinois v. Somerville,* 410 U.S. 458, 462–63, 93 S.Ct. 1066, 1069–70, 35 L.Ed.2d 425 (1973); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). In the latter situation, the Double Jeopardy Clause would not bar a retrial even if legal-

concurring). *Cf. Lockhart v. Nelson,* 488 U.S. 33, 41, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988) (reviewing court should consider erroneously admitted evidence in determining whether double jeopardy bars retrial due to insufficient evidence at first trial). *But see United States v. Haddock,* 956 F.2d 1534, 1549 (10th Cir.1992) (declining to review sufficiency of evidence on

direct appeal for counts in which conviction was reversed for legal error).

**10.** Although *Lydon* states that a conviction does not terminate jeopardy, 466 U.S. at 308, 104 S.Ct. at 1813, we believe that this statement must be construed in the context of the two-tier system under review.

ly insufficient evidence was presented at the first trial. *Richardson,* 468 U.S. at 326, 104 S.Ct. at 3086. We see no reason why the result should be any different when the district court grants Defendant's motion for a new trial after the jury returns a verdict. Indeed, in the present situation, Defendant is better off because he had the opportunity to secure an acquittal by the initial jury. *See Lydon,* 466 U.S. at 312, 104 S.Ct. at 1815 ("[n]othing in the Double Jeopardy Clause prohibits a State from affording a defendant two opportunities to avoid conviction and secure an acquittal") (internal quotations and footnote omitted). Moreover, Defendant was not forced to forego his "right to have his fate determined by the jury that was first empaneled and sworn." *Crotwell,* 896 F.2d at 439. Rather, he received a verdict from the first jury; he simply does not like the result.

The rationale for barring a retrial after an acquittal has been explained as follows:

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety, and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Certainly, a new trial will subject Defendant to the additional "embarrassment, expense and ordeal" that comes with being accused of and forced to stand trial for a criminal act. Moreover, we have no doubt as to the continued "state of anxiety and insecurity" that Defendant would endure in a second trial. However, these factors are no different from those that the defendant in *Richardson* was forced to endure and, therefore, cannot be considered sufficient to require a sufficiency review in order to protect Defendant's double jeopardy rights. Defendant was undoubtedly aware of these subjective factors when he moved for a new trial. He could have avoided them by accepting the jury's verdict and taking a direct appeal from a final judgment in which he would have received a sufficiency review.

Finally, Defendant's retrial without a sufficiency review will not enhance the possibility that Defendant may be erroneously convicted. The jury found Defendant guilty, and the district court found the evidence to be legally sufficient. The government is not "seeking the opportunity to supply evidence which it failed to muster in the first proceeding." *Burks,* 437 U.S. at 11, 98 S.Ct. at 2147. As far as the government and the district court are concerned, sufficient evidence was presented at the first trial. *See Lydon,* 466 U.S. at 310–11, 104 S.Ct. at 1814 (because two-tier system did not permit appellate review after first tier bench trial, the prosecution would not be allowed to reformulate its case to supply the evidence determined to be lacking at the first trial). While the government will have an added advantage of having had the opportunity to view Defendant's defense, this factor should have been considered by Defendant in his decision to move for a new trial.

In light of *Richardson,* we cannot say that the jury's guilty verdict which was set aside on Defendant's motion, terminated jeopardy. Therefore, Defendant's retrial will not violate the Double Jeopardy Clause regardless of the sufficiency of the evidence at the first trial. *See United States v. Porter,* 807 F.2d 21 (1st Cir.1986) (defendant cannot raise double jeopardy claim in an interlocutory appeal based on purported insufficiency of the evidence at the first trial). Accordingly, we decline Defendant's invitation to review the sufficiency of the evidence.

**B.**

■ Defendant also contends that because the jury's special verdict was based solely on the first of six alleged false statements, he was implicitly acquitted of the remaining five false statements.[11] When a

---

**11.** While no final judgement was entered because of Defendant's motion for a new trial, this

jury is instructed on both a greater and lesser included offense and returns a guilty verdict on the lesser offense which is subsequently reversed due to trial error, the defendant cannot be retried on the greater offense. *Price*, 398 U.S. at 329, 90 S.Ct. at 1761; *Green*, 355 U.S. at 190–91, 78 S.Ct. at 225. This rule regards the jury's verdict of an "implicit acquittal" of the greater offense. *Price*, 398 U.S. at 328, 90 S.Ct. at 1760; *Green*, 355 U.S. at 190, 78 S.Ct. at 225.

The difficulty with Defendant's argument is that the jury was instructed on only one offense, 18 U.S.C. § 1001, and it found Defendant guilty of that offense. The jury was presented with six false statements and instructed that it must unanimously agree on at least one of the statements. In response to the jury's inquiry, the district court instructed it that if it unanimously agreed that Defendant was guilty as to one statement, it need not agree on the others but it must reveal in a special verdict which of the statements it based its finding of guilt. The jury's special verdict found Defendant guilty based on the first false statement. Thus, Defendant was not acquitted of any lesser offense. *See Scott*, 437 U.S. at 97, 98 S.Ct. at 2197 ("acquittal [is] a resolution in defendant's favor ... of some or all of the factual elements of the offense charged") (internal quotations and brackets omitted).

In *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the Supreme Court rejected the contention "that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an acquittal of that circumstance for double jeopardy purposes." *Id.* at 155, 106 S.Ct. at 1755. The *Poland* Court held that, in a successive capital sentencing proceeding,

the government may rely on an aggravating circumstance which was alleged but not relied on in the initial proceeding to determine the appropriateness of the death penalty. *Id.* at 157, 106 S.Ct. at 1756. The proper inquiry is whether there has been a determination "that the prosecution has not proved its case...." *Id.* at 155, 106 S.Ct. at 1755 (internal quotations omitted).

Here, the jury decided that the government did prove its case. This decision was reviewed by the district court and it agreed by finding that the evidence was legally sufficient to support the conviction when it denied Defendant's post-verdict motion for a judgment of acquittal. As there has been no acquittal, retrial on all six statements alleged count 1 is not barred by the Double Jeopardy Clause.[12]

### III.

### A.

■ Before we address whether the district court erred in dismissing count 2, our statutory grant of jurisdiction requires us to address Defendant's contention that his retrial on count 2 is barred by the Double Jeopardy Clause. *See* 18 U.S.C. § 3731. Defendant argues that because the jury has already made a factual determination concerning the false statements which allegedly obstructed justice when it found him guilty of count 1, he cannot be reprosecuted on count 2. At trial, the government sought to prove that the false statements alleged in count 1 were also the means by which Defendant allegedly obstructed justice as charged in count 2. Nevertheless, the Double Jeopardy Clause does not bar Defendant's retrial on count 2 for several reasons.

would not preclude application of the Double Jeopardy Clause if the jury's verdict constituted an acquittal on any part of the charge. *See Ball*, 163 U.S. at 671, 16 S.Ct. at 1195 ("a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offence").

**12.** In our earlier opinion denying the government's motion to dismiss Defendant's cross-ap-

peal for lack of jurisdiction, we held that Defendant had raised a colorable double jeopardy claim. *Wood*, 950 F.2d at 642. Our resolution of the merits of Defendant's claims makes future double jeopardy claims like Defendant's non-colorable and, therefore, subject to summary dismissal when asserted on an interlocutory appeal. *See Richardson*, 468 U.S. at 326 n. 6, 104 S.Ct. at 3086 n. 6.

First, Defendant sought dismissal of count 2 (and similarly moved for a new trial on count 1) on grounds unrelated to his factual guilt or innocence.[13] "The general rule is that where ... a defendant requests a mistrial, the Double Jeopardy Clause does not bar a retrial." *Poe*, 713 F.2d at 583. *See also Scott*, 437 U.S. at 93, 98 S.Ct. at 2194; *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. "Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Scott*, 437 U.S. at 93, 98 S.Ct. at 2195. For double jeopardy purposes, Defendant's motion to dismiss a defective indictment after jeopardy has attached is the equivalent to a motion for a mistrial. *Lee v. United States*, 432 U.S. 23, 30–31, 97 S.Ct. 2141, 2145–46, 53 L.Ed.2d 80 (1977). Thus, Defendant effectively waived his double jeopardy rights relating to count 2 by moving to dismiss the charge for failure to state an offense.[14]

Additionally, counts 1 and 2 are not the same offense for purposes of the Double Jeopardy Clause. In *United States v. Blockburger*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that a defendant may be prosecuted and punished for the same act under separate criminal statutes if each statute requires proof of a fact that the other does not. *Id.* at 304, 52 S.Ct. at 182. "Application of the [*Blockburger*] test focuses on the statutory elements of the offense." *Albernaz v. United States*, 450 U.S. 333, 338, 101 S.Ct.

1137, 1142, 67 L.Ed.2d 275 (1981). *See also Grady*, 110 S.Ct. at 2093 n. 12. Count 1 charged a violation of 18 U.S.C. § 1001, under a false statement theory:

> The essential elements which the Government must prove in a false statement prosecution under Section 1001 are that (1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was within the jurisdiction of the federal agency; and (5) the statement was material.[15]

*United States v. Irwin*, 654 F.2d 671, 675–76 (10th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). By contrast, count 2 charged a violation of the omnibus clause under 18 U.S.C. § 1503:

> [t]here are three core elements that the government must establish to prove a violation of the omnibus clause of section 1503: (1) there must be a pending judicial proceeding; (2) the defendant must have knowledge or notice of the pending proceeding; and (3) the defendant must have acted corruptly with the specific intent to obstruct or impede the proceeding in its due administration of justice.[16]

*United States v. Williams*, 874 F.2d 968, 977 (5th Cir.1989). Count 1 requires proof of a material false statement by the Defendant while count 2 requires proof of a pending judicial proceeding. Thus, each count requires proof of a fact which the other does not. *See United States v. Woodward*, 469 U.S. 105, 108, 105 S.Ct.

---

**13.** While the district court's written order states that it dismissed count 2 sua sponte, the transcript clearly indicates that the court dismissed count 2 after Defendant moved for dismissal for "failure to state an offense." *See Scott*, 437 U.S. at 96, 98 S.Ct. at 2196 (district court's characterization of its actions does not control).

**14.** An exception to the general rule exists where "a prosecutorial or judicial impropriety gives rise to a defendant's successful motion for a mistrial and that impropriety was intended to provoke the defendant to file the motion...." *Crotwell*, 896 F.2d at 439 n. 5 (citing *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982)). Although the district court raised the issue of the sufficiency of count 2 sua sponte, its action, which was addressed solely to the protection of Defendant's rights,

cannot be considered a judicial impropriety which was intended to provoke Defendant into waiving his double jeopardy rights.

**15.** Whether a statement is material is a legal question for determination by the judge rather than the jury. *United States v. Jones*, 933 F.2d 807, 811–12 (10th Cir.1991); *Daily*, 921 F.2d at 1004.

**16.** Further, when the alleged obstruction of justice is based on false testimony, "the government must establish a nexus between the false statements and the obstruction of justice," which involves "proof that the false testimony was of the kind having a probable effect of obstructing justice...." *United States v. Thomas*, 916 F.2d 647, 652 (11th Cir.1990).

611, 612, 83 L.Ed.2d 518 (1985) (per curiam) (§ 1001 false statement charge is not a lesser included offense of 31 U.S.C. § 1101 prohibiting the willful failure to report the carrying of more than $5,000 into the country because concealment of a material fact only violates § 1101 if done by trick, scheme or device). Thus, counts 1 and 2 are not the same offense for double jeopardy purposes.

While, the Supreme Court has recently stated that "a technical comparison of the elements of the two offenses as required by *Blockburger* does not protect defendants sufficiently from the burdens of multiple trials," *Grady*, 110 S.Ct. at 2093, the double jeopardy test for subsequent prosecutions announced in *Grady*[17] is not applicable when the defendant has not been convicted. *See United States v. Holland*, 956 F.2d 990 (10th Cir.1992). The Supreme Court has looked to whether the subsequent prosecution was based on the same conduct of an earlier prosecution only when the earlier prosecution resulted in a conviction or acquittal. *See id.* 110 S.Ct. at 2094; *Illinois v. Vitale*, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 162–63, 97 S.Ct. 2221, 2223–24, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam); *Ashe v. Swenson*, 397 U.S. 436, 446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Moreover, Defendant sought to terminate the proceedings on grounds unrelated to his factual guilt or innocence. By contrast, in *Grady*, the government unilaterally initiated the subsequent prosecution after the defendant had pled guilty and been sentenced. 110 S.Ct. at 2088–89. This case, therefore, "falls outside of *Grady's* domain." *Holland*, 956 F.2d at 994. Because counts 1 and 2 are not the same offense under *Blockburger*, and Defendant is not entitled to the application of the rule announced in *Grady*, the Double Jeopardy Clause does not bar his retrial on count 2.

**B.**

■ Having determined that we have jurisdiction over the government's appeal, we review the sufficiency of a charge in the indictment de novo. *United States v. Tuohey*, 867 F.2d 534, 536 (9th Cir.1989). "The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). Generally, the "essential facts" are those which put the defendant on fair notice of the charge against which he must defend and which enable him to plead double jeopardy in a subsequent prosecution. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). The Supreme Court has recognized two important corollary purposes of an indictment. First, an indictment should " 'inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had.' " *Russell*, 369 U.S. at 768, 82 S.Ct. at 1049 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588 (1875)) (footnote omitted). Additionally, an indictment must allege sufficient facts to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury. *Id.* 369 U.S. at 770–71, 82 S.Ct. at 1050–51. Generally, an indictment will be sufficient if it "set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " *Hamling*, 418 U.S. at 117, 94 S.Ct. at 2907 (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)).

Count 2 charged Defendant with obstruction of justice in violation of 18 U.S.C. § 1503 which reads in relevant part:

---

**17.** Under *Grady*, in order to determine whether a successive prosecution is permissible under the Double Jeopardy Clause after determining that the two offenses are not the same under *Blockburger*, we must determine whether the prosecution "will prove conduct that constitutes an offense for which the defendant has already been prosecuted" in order to establish an essential element of an offense charged in the second prosecution. 110 S.Ct. at 2093.

"[w]hoever ... corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1503. "Section 1503 is designed to protect the administration of justice in federal court and those participating therein." *United States v. Griffin,* 463 F.2d 177, 179 (10th Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 344, 34 L.Ed.2d 254 (1972). Accordingly, the "due administration of justice" has been interpreted as applying only to a pending judicial proceeding.[18] *See United States v. Simmons,* 591 F.2d 206, 208 (3d Cir.1979). Further, the defendant must know of the proceeding, *United States v. Guzzino,* 810 F.2d 687, 696 (7th Cir.), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 529 (1987), and specifically intend to impede its administration. *Id.* (citing *United States v. Ardito,* 782 F.2d 358, 361 (2d Cir.), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986)). *See also United States v. Carleo,* 576 F.2d 846, 849 (10th Cir.) ("violations of 18 U.S.C. § 1503 ... require proof of specific intent"), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978).

Count 2 alleged all the essential elements of the offense; specifically, it charged:

On or about May 22, 1989, within the State and District of New Mexico, defendant PAUL D. WOOD did corruptly influence, obstruct, and impede and did endeavor to influence, obstruct and impede the due administration of justice by making false, fictitious and fraudulent statements and representations to Special Agents Michael Pullano, Linda Bateman and George Black of the Federal Bureau of Investigation, United States Department of Justice, knowing that those special agents interviewed him in furtherance of an investigation by the United States Grand Jury sitting in Phoenix, Arizona within the District of Arizona, into allegations of violations of federal criminal law relating to the political corruption of Peter MacDonald, then Chairman of the Navajo Nation of Indians, in order to prevent that Grand Jury from learning the true facts and purpose concerning PAUL D. WOOD'S conveyance of a 1988 red Nissan Pulsar automobile to Peter MacDonald in August, 1988.

In violation of Title 18, United States Code, Section 1503.

X R. doc. 1, at 3. Thus, count 2 alleged a pending grand jury investigation of which Defendant had knowledge. It further alleged that Defendant "influence[d], obstruct[ed], and impede[d] and did endeavor to influence, obstruct and impede the due administration of justice." Finally, the allegation that Defendant acted "in order to prevent [the] grand jury from learning the true facts and purpose" concerning his conveyance of an automobile to Chairman MacDonald is a sufficient allegation of specific intent.[19]

---

18. While a grand jury investigation is a pending judicial proceeding for purposes of § 1503, *United States v. McComb,* 744 F.2d 555, 560 (7th Cir.1984); *Simmons,* 591 F.2d at 208; *United States v. Walasek,* 527 F.2d 676 (3d Cir.1975); *Shimon v. United States,* 352 F.2d 449 (D.C.Cir. 1965), an investigation by the FBI is not. *See Simmons,* 591 F.2d at 208 ("the obstruction of an investigation that is being conducted by the FBI, or by any similar governmental agency or instrumentality, does not constitute a § 1503 violation because such agencies or instrumentalities are not judicial arms of the government 'administering justice'"); *United States v. Fayer,* 573 F.2d 741, 745 (2d Cir.) ("[c]orrupt advice under 18 U.S.C. § 1503 must relate to an investigation by the grand jury, not the FBI"), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). *See also United States v. Ryan,* 455 F.2d 728, 733 (9th Cir.1972) (IRS investigation is not a judicial proceeding for purposes of § 1503).

19. While count 2 may allege all the essential elements of the offense and adequately puts Defendant on notice of the conduct for which he is charged, we express no opinion on whether the conduct charged—*i.e.* making unsworn false statements to FBI agents who were investigating on behalf of a sitting grand jury—is proscribed by 18 U.S.C. § 1503. Obstruction of justice may be committed in a variety of different ways. *See, e.g., Williams,* 874 F.2d at 982 (testifying falsely before a grand jury); *United States v. Shannon,* 836 F.2d 1125, 1128 (8th Cir.) (persuading witness to testify falsely), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988); *United States v. McKnight,* 799 F.2d 443, 447 (8th Cir.1986) (destroying subpoenaed documents); *Fayer,* 573 F.2d at 745 (persuading witness not to testify); *Griffin,* 463 F.2d at 178

Count 2 is sufficiently pled to give Defendant notice of the conduct for which he is charged and to enable him to plead double jeopardy in a subsequent prosecution. Count 2 clearly informs Defendant that the alleged obstruction of justice related to false statements he made to FBI agents concerning the conveyance of the car. It is simply asking too much of the indictment to require an allegation of the particular statements the government intended to prove were false in a § 1503 prosecution.[20] *See Griffin,* 463 F.2d at 178 (indictment charging that defendants did "by threats and force injure the person of and endeavor to intimidate a witness ..." was sufficient to state an offense under § 1503). *See also United States v. Friedland,* 660 F.2d 919, 930 (3d Cir.1981) (§ 1503 charge need not allege specific false testimony that defendant allegedly induced witness to give), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982); *United States v. Haas,* 583 F.2d 216, 221 (5th Cir.1978) (failure to allege what defendant said to grand jury member was not fatally defective to indictment), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). Count 2 is also sufficient to enable Defendant to plead double jeopardy in a subsequent prosecution because it clearly identified the essential facts, and, given that the count was not dismissed until after the government's case in chief, the trial record is available to avoid double jeopardy. *See Russell,* 369 U.S. at 764, 82 S.Ct. at 1047; *Haas,* 583 F.2d at 221.

The district court expressed particular concern over whether the indictment adequately protected Defendant's right to be tried on charges presented to the grand jury. Defendant is not entitled to all of the evidentiary detail presented to the grand jury. To read the function of the indictment this strictly would unduly restrict the government's ability to continue to gather evidence following the return of an indictment. *See United States v. Staggs,* 881 F.2d 1527, 1535 (10th Cir.1989) (Logan, J., concurring) ("[n]owhere in the criminal law do we require all *evidence* presented at trial to be presented to the grand jury") (original emphasis), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990). The allegations in count 2 were sufficient to ensure that Defendant was prosecuted on the basis of facts presented to the grand jury.[21]

We AFFIRM the district court's order granting Defendant a new trial on count 1 and REVERSE the district court's order dismissing count 2. We REMAND to the district court for proceedings consistent with this opinion.

---

(threatening or intimidating a potential witness). However, we have not found one reported case where a person was charged with, much less convicted of, obstructing justice based on unsworn false statements to FBI agents investigating on behalf of a grand jury.

Furthermore, to the extent that the FBI agents were acting on behalf of the grand jury, there is some question as to whether false statements made to them may be prosecuted under 18 U.S.C. § 1001 as charged in count 1. *See United States v. Deffenbaugh Indus.,* 957 F.2d 749, 754 (10th Cir.1992) (submission to Justice Department attorney of false affidavit of compliance with grand jury subpoena was not a violation of § 1001 because statements in affidavit were not within the jurisdiction of Justice Department). However, as it is not properly before us, we express no opinion on whether the conduct charged in count 1 is proscribed by 18 U.S.C. § 1001 or whether counts 1 and 2 are mutually exclusive.

**20.** While a bill of particulars cannot cure a deficient indictment, Defendant's failure to move for one is persuasive evidence that he sufficiently understood the charge in order to prepare a defense.

**21.** Because count 2 was sufficient in and of itself, we need not address the arguments relating to the failure to expressly incorporate the false statements in count 1.