F I L E D
United States Court of Appeals
Tenth Circuit

MAR 10 1998

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES L. McALEER,

      Defendant-Appellant.

No. 97-8047

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARY A. GILMORE,

      Defendant-Appellant.

No. 97-8048

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SHIRLEY D. McALEER,

      Defendant-Appellant.

No. 97-8049

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ANTHONY J. CARTA,

     Defendant-Appellant.

No. 97-8051

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. Nos. 96-CR-15-2, 96-CR-15-3, 96-CR-15-4, 96-CR-15-5)

---

David A. Kubichek and Lisa E. Leschuck, Assistant United States Attorneys (David D. Freudenthal, United States Attorney, with them on the brief), Casper, Wyoming, for Plaintiff-Appellee.

Scott J. Engelhard, Seattle, Washington, for Defendant-Appellant James L. McAleer.

James H. Barrett, Assistant Federal Public Defender, Cheyenne, Wyoming, for Defendant-Appellant Mary A. Gilmore.

Thomas B. Jubin, Cheyenne, Wyoming, for Defendant-Appellant Shirley D. McAleer.

Jo Ann Fulton, Laramie, Wyoming, for Defendant-Appellant Anthony J. Carta.

---

Before TACHA, McWILLIAMS, and BALDOCK, Circuit Judges.

---

BALDOCK, Circuit Judge.

---

     Defendants appeal the district court's denial of their respective motions to dismiss the indictment on grounds that the Double Jeopardy Clause of the Fifth Amendment bars

2

their retrial.[1]   Our jurisdiction arises under 28 U.S.C. § 1291.  See Abney v. United States, 431 U.S. 651, 662 (1977).   We affirm.

I.

This case centers around a fraudulent investment scheme orchestrated by James Gilmore to induce individuals to invest in a plan referred to as the "Master Transaction."[2] The "Master Transaction" involved $157 trillion allegedly held on deposit in various European banking institutions by the Mafia, the United States Central Intelligence Agency, the Vatican, and a mysterious group called the "Illuminati."  Potential investors were told that once James Gilmore coordinated the release of these funds, investors would receive a return on their investment at the rate of 2,000 to one.  James Gilmore hired International Trading, Inc., (hereinafter "ITI") to sell shares in the "Master Transaction."

In October 1992, the Securities Exchange Commission (hereinafter "SEC"), obtained a temporary restraining order prohibiting Gilmore from soliciting money through ITI in violation of federal securities laws.   Gilmore then began obtaining investors through Morgan Investment Pool, Inc., which employed Defendant James McAleer, and the Allington Association of Business Administrators (hereinafter "AABA"), of which McAleer was a member of the board of directors.  McAleer, along with his wife Shirley,

---

[1] Although Defendants' appeals were not consolidated, we address them concurrently because Defendants were charged in a single indictment, tried together and raise similar issues on appeal.

[2] The father of co-defendant Mary A. Gilmore, James Gilmore has remained in England throughout these proceedings.  Attempts to extradite him failed.

began soliciting investors for various Gilmore programs representing that investors would receive a 2,000 to one rate of return once the "Master Transaction" or "European Fortune" was completed. Incredibly, Defendants obtained large sums of money from investors, including approximately $1,072,000 from AABA members.

In October 1994, James McAleer formed another entity, the Rafter Lafter Association (hereinafter "RLA"), to promote James Gilmore's scheme. RLA hired Defendant Anthony Carta to serve as a bodyguard for Defendant Mary A. Gilmore. Carta and Gilmore traveled throughout the United States during 1994 and 1995 promoting the "Master Transaction" and soliciting investors for RLA. During the four-year operation of the scheme, Defendants collected approximately $1.8 million from investors. The proceeds were distributed among Defendants and James Gilmore.[3]

On January 26, 1996, Defendants were indicted for their involvement in the "Master Transaction" scheme. Mary A. Gilmore was charged with violating 18 U.S.C. § 1956(h), conspiracy to launder money. Shirley McAleer was charged with violating 18 U.S.C. § 1956(h) and 18 U.S.C. §§ 1343, 2, wire fraud and aiding and abetting. James McAleer was charged with violating 18 U.S.C. § 1956(h); 18 U.S.C. § 1343; 18 U.S.C. § 1341, mail fraud; and 15 U.S.C. §§ 77q(a)(1)-(3) & § 77x, securities fraud. Anthony

---

[3] Between March 1994 and March 1995, Defendants distributed among themselves the following amounts: James and Shirley McAleer, $252,000; Anthony Carta and Mary A. Gilmore, $205,000; and James Gilmore, $245,000. During the course of the scheme, Defendants also executed financial transactions totaling $780,000 in their efforts to launder the proceeds from the scheme.

4

Carta was charged with violating 18 U.S.C. § 1956(h) and 18 U.S.C. § 1343.

The Defendants' trial commenced on November 6, 1996. Almost six weeks into the trial, during her cross-examination, the Government asked Mary Gilmore about the assertion of her Fifth Amendment privilege against self-incrimination during earlier SEC proceedings. Gilmore was asked if she remembered "taking the Fifth Amendment 41 times" during those proceedings. Counsel for Gilmore objected and moved for a mistrial. The district court denied the motion and overruled the objection on the ground that the questioning was relevant to Gilmore's credibility. The cross-examination of Gilmore resumed, with the Government referring approximately twenty-five times to Gilmore's use of her Fifth Amendment privilege during a 1992 SEC deposition and a 1994 civil contempt proceeding against James Gilmore. The Government also asked Gilmore if she had told her co-defendants that she had previously invoked her Fifth Amendment privilege.

The following day Defendants joined in a renewed motion for mistrial. The district court denied the motion, but agreed to give a curative instruction directing the jury to only use Gilmore's assertion of her Fifth Amendment privilege in assessing Gilmore's credibility. On December 20, 1996, after a seven-week trial, a jury returned guilty verdicts on all the counts.

In various post-trial motions, all of the Defendants sought judgments of acquittal or new trials. The Government conceded that its questioning of Gilmore regarding her

5

Fifth Amendment privilege constituted clear error, and on February 14, 1997, the district court granted Gilmore a new trial. On March 14, 1997, the district court conducted a hearing regarding the remaining Defendants' post-trial motions. On April 15, 1997, the district court denied the motions for judgment of acquittal, concluding that the evidence was sufficient to sustain the guilty verdicts. The district court granted Defendants' motions for a new trial, however, holding that the attack by the Government on Gilmore's use of her Fifth Amendment privilege prejudiced all of Defendants and was not harmless error. All of the Defendants then filed motions to dismiss the indictment on double jeopardy grounds. On June 5, 1997, the district court denied Defendants' motions and this appeal followed.

## II.

We review de novo the district court's denial of a motion to dismiss the indictment on double jeopardy grounds. United Sates v. Cordoba, 71 F.3d 1543, 1545 (10th Cir. 1995). The Double Jeopardy Clause of the Fifth Amendment protects defendants from repeated prosecutions or multiple punishments for the same offense. United States v. Dinitz, 424 U.S. 600, 606 (1976). As part of this protection, the Double Jeopardy Clause affords a criminal defendant the right "to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689 (1949). However, the Double Jeopardy Clause does not "guarantee" that the State will enforce the criminal laws in one proceeding. Oregon v. Kennedy, 456 U.S. 667, 672 (1982). Double jeopardy does "not

6

go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error." United States v. Jorn, 400 U.S. 470, 484 (1971).

Defendants argue that under Oregon v. Kennedy, 456 U.S. 667 (1982), and the line of cases preceding it, their retrial is barred. The district court, applying the analysis set forth in Kennedy, determined retrial was not barred. In Kennedy, the Supreme Court expounded on a prosecutorial misconduct exception to the general rule that if a mistrial is declared at the defendant's request, double jeopardy does not bar reprosecution for the same offense. Kennedy, 456 U.S. at 673. This narrow exception articulated in Kennedy provides that if governmental misconduct was intended to "goad" the defendant into moving for a mistrial, double jeopardy does indeed bar reprosecution. Id. at 676.

Defendants argue that the prosecutor's repeated questioning of Mary Gilmore about her Fifth Amendment privilege was intended to provoke them into seeking a mistrial. Therefore, Defendants maintain, under the Kennedy exception for prosecutorial misconduct, their retrial would violate double jeopardy. Defendants' reliance on Kennedy is misplaced, however, because no mistrial was declared in this case. The district court never granted Defendants' motions for a mistrial. The case proceeded to the jury and guilty verdicts were returned. Defendants did not obtain a mistrial, but instead succeeded in having the district court set aside the guilty verdicts. Although Defendants attempt to characterize the district court's order setting aside the jury verdicts

7

and granting a new trial as the functional equivalent of a mistrial, Defendants miss a crucial distinction.   The Kennedy prosecutorial misconduct exception is a narrow one, designed to protect the defendant's right to "have his trial completed before the first jury empaneled to try him."  Kennedy, 456 U.S. at 673.  Without this exception a prosecutor could intentionally provoke a defendant into requesting a mistrial and the defendant would then be prevented from later invoking a double jeopardy bar to his retrial.   Such a result would render a defendant's "valued right to complete his trial before the first jury" a "hollow shell."  Id.  Defendants, however, do not require such protection because without the declaration of a mistrial, they were not deprived of their "valued right" to have their case submitted to the first jury, and perhaps have the dispute end with an acquittal.    For these reasons, we conclude that the mistrial exception for prosecutorial misconduct set forth in Kennedy simply does not apply to Defendants.

Having determined that the Oregon v. Kennedy line of cases does not bar Defendants retrial, we now turn to an analysis of whether other double jeopardy grounds bar Defendants' retrial.   We must decide whether under the circumstances a second trial would subject Defendants to multiple prosecutions for the same offense.   A separate line of cases beginning with United States v. Ball, 163 U.S. 662 (1896), stand for the general proposition that the Double Jeopardy Clause "imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside."  Kennedy, 456 U.S. at 676 n.6 (internal citations omitted).  The

8

principle that the Double Jeopardy Clause "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings . . . is a well-established part of our constitutional jurisprudence." North Carolina v. Pearce, 395 U.S. 711, 720 (1969) (quoting United States v. Tateo, 377 U.S. 463, 465 (1964)).

The facts of this case fall squarely within the Ball line of cases. At Defendants behest and after trial, the district court set aside the jury verdicts against them. The district court did so because of an error in the proceedings -- the prosecutor's improper cross-examination of Defendant Mary Gilmore. The district court's decision to set aside the jury verdicts at Defendants' request nullified the original verdict just as a reversal on appeal would nullify a conviction. As a result, the "slate has been wiped clean" and double jeopardy does not bar retrial. See Pearce, 395 U.S. at 720-21.

Furthermore, the protections of the Double Jeopardy Clause only apply "if there has been some event, such as an acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325 (1984). The setting aside of a jury's guilty verdict by the district court does not terminate original jeopardy. United States v. Wood, 958 F.2d 963, 970 (10th Cir. 1992). Thus, Defendants' retrial will not subject them to being twice put in jeopardy for the same offense. Accordingly, even though the district court erroneously relied upon Oregon v. Kennedy, we affirm, albeit on different grounds, the district court's denial of Defendants' motions to dismiss indictment. See United States v. Knox, 124 F.3d 1360, 1362 (10th Cir. 1997) (court of appeals may affirm

on any ground supported by the record).

III.

Defendant Shirley McAleer also appeals the district court's denial of her motion for judgment of acquittal due to the insufficiency of the evidence. Citing Burks v. United States, 437 U.S. 1 (1978), McAleer argues that a second trial would violate the Double Jeopardy Clause because the Government failed to present evidence sufficient to support her conviction at the first trial. In Burks the Supreme Court held that the Double Jeopardy Clause bars retrial once a defendant has obtained an appellate ruling that the Government failed to introduce sufficient evidence to convict him at trial. Burks v. United States, 437 U.S. at 18. Before reaching the merits of her claim, we must first determine whether McAleer's interlocutory appeal is properly before us.[4] We conclude that it is not.

Because McAleer is not appealing a final order, her claim is appealable, if at all, under the collateral order doctrine. Under this doctrine, an order is immediately appealable if it is "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Although the denial of a pretrial motion to dismiss an indictment on double jeopardy

---

[4] We note that in contravention of Fed.R.App.P. 28, counsel for McAleer failed to include in the briefs a statement of appellate jurisdiction regarding this claim.

grounds falls within the collateral order exception, only "colorable" double jeopardy

claims may be appealed before final judgment.[5]  Richardson, 468 U.S. at 325 n.6.  To be

colorable, a claim must have some possible validity.  Id.  Because we rejected the

identical double jeopardy claim McAleer raises here in United States v. Wood, 958 F.2d

963 (10th Cir. 1992), we conclude that McAleer has not raised a colorable claim.

In Wood, after the jury returned a guilty verdict, the defendant moved for a

judgment of acquittal or, in the alternative, for a new trial.  The district court denied the

motion for judgment of acquittal and granted a new trial.  The Government appealed the

district court's order granting a new trial and the defendant cross-appealed the district

court's denial of his motion for judgment of acquittal.[6]  The defendant argued that double

jeopardy barred his retrial because the evidence at the first trial was insufficient to support

his conviction.  We rejected the defendant's claim,  holding that when a guilty verdict is

set aside on the defendant's motion, original jeopardy has not been terminated and retrial

does not violate the Double Jeopardy Clause "regardless of the sufficiency of the

evidence at the first trial." Id. at 971.  We also recognized in Wood that future double

---

[5] Although McAleer framed the issue by asserting that the district court erred in denying her motion for judgment of acquittal, our jurisdiction arises, if at all, under the double jeopardy collateral order exception; therefore, we review her insufficiency claim in light of its double jeopardy implications.

[6] In an earlier order denying the Government's motion to dismiss the appeal for lack of jurisdiction, and prior to addressing the merits, we determined that Wood had raised a colorable double jeopardy claim which could be brought in an interlocutory appeal under the collateral order doctrine.  United States v. Wood, 950 F.2d 638 (10th Cir. 1991) (per curiam).

11

jeopardy claims like this one would no longer be colorable and would be subject to summary dismissal when asserted in an interlocutory appeal.   <u>Wood</u>, 958 F.2d at 972 n.12.   In light of <u>Wood</u>, McAleer has failed to raise a colorable claim.  Accordingly, we dismiss McAleer's interlocutory appeal of the district court's denial of her motion for judgment of acquittal.

AFFIRMED IN PART, AND APPEAL DISMISSED IN PART.