UNITED STATES of America, Plaintiff-Appellee,

v.

Bruce Allen WHITE, Defendant-Appellant.

No. 77–1015.

United States Court of Appeals, Tenth Circuit.

Submitted April 11, 1977.

Decided June 22, 1977.

Don McCorkell, Jr., Tulsa, Okl., for defendant-appellant.

Nathan G. Graham, U.S. Atty., and Ben F. Baker, Asst. U.S. Atty., Tulsa, Okl., for plaintiff-appellee.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

PER CURIAM.

Defendant White appeals his conviction following a trial to the court on one count of obstructing justice in violation of 18 U.S.C. § 1503. The issues presented are whether the evidence was sufficient to establish White's specific intent to obstruct justice and whether the person assaulted was a "witness" within the meaning of the statute.

Viewed in the light most favorable to the verdict, the evidence established that in No- vember of 1975, White became acquainted with one Donald Joe Disney, a co-employee at Boyce Air Conditioning. Both men were employed as "duct installers" and in addition to their contacts at work sometimes ate lunch together and shared rides home. This "casual" social relationship continued for approximately 2½ months until February of 1976 when both men terminated their employment at Boyce's. Disney accepted new employment at a convenience store and had no further contact with White for approximately 4 months until May 30, 1976, when White entered the store and attempted to pass a counterfeit $20 bill to Disney. Disney reported this incident to the Secret Service and a complaint charging White with passing counterfeit money was filed with a United States Magistrate on June 3, 1976. A copy of this complaint listing Disney as the principal witness was served upon White at the time of his arrest on June 4, 1976. On June 25 an indictment was returned by a federal grand jury.

On June 30, five days after the indictment was returned, Disney was sitting in his car at approximately 11:30 p. m. waiting to cross an intersection. A car travelling along the intersecting street slammed on its brakes, turned in front of him, narrowly missing his car, and stopped roughly even with his car on the opposite side of the street. Disney did not immediately recognize the driver of the other car but thought the driver was going to get out and apologize for getting so close to his car. Disney did not notice the other driver again until he heard someone kick his car on the driver's side door, looked up, and noticed White outside his window. White was yelling profanities at Disney, kicking his car door, and attempting to gain entry into the car. Disney turned to lock his door and roll up his window but found they were already locked and closed. This scene continued for approximately 30 to 45 seconds until the intersection cleared and Disney drove through leaving White standing in the middle of the road yelling after him. Disney reported this encounter to the United States Attorney and charges of obstructing justice by

intimidating a witness in a pending federal proceeding or injuring his property in violation of 18 U.S.C. § 1503 were filed against White.[1]

During his trial on the obstruction of justice charge White waived a jury and took the stand in his own defense. White admitted most of the facts surrounding the June 30 incident as set forth above, including kicking Disney's car and addressing Disney with profane language. The essential difference in White's testimony and the basis of his defense, however, was that he kicked Disney's car only after Disney had ignored White's attempts to talk to him, had rolled up his window on White, and was attempting to drive off. White claimed he was simply angered at being "snubbed" by one whom he considered a friend. White insisted his only purpose in approaching Disney was to find out if Disney knew what was going to happen to him in the pending counterfeiting case. White denied any intent to influence Disney's testimony and maintained he did not consider Disney a potential witness since White had already decided to plead guilty to the counterfeiting charge and knew there would be no trial. Thus, the only question presented regarding the sufficiency of the evidence is whether White's specific intent to intimidate Disney in his capacity as a witness was sufficiently established.

The trial court found White's account of his motive in approaching Disney's car implausible since White had already discussed the consequences of the counterfeiting charge with his appointed counsel, had agreed to withhold his guilty plea until his counsel had examined various "procedural" defenses, and had no reason to believe Disney would have any additional information regarding the possible sentence that might be imposed. The court further found that under the circumstances the only reasonable inference that could be drawn from the facts was that the June 30 incident was prompted by Disney's known involvement in the pending counterfeiting case and not by any pre-existing social relationship as claimed by White. Having determined that White possessed the requisite specific intent the court concluded that in light of our decision in *Broadbent v. United States*, 10 Cir., 149 F.2d 580, White's acts were sufficient to constitute an "endeavor to influence a witness" and adjudged him guilty of obstructing justice.

It is well settled that in reviewing the sufficiency of the evidence in a criminal case the evidence, both direct and circumstantial together with the reasonable inferences that may be drawn therefrom, is to be viewed in the light most favorable to the government to determine whether there is sufficient substantial proof upon which the finder of fact might base a verdict of guilty beyond a reasonable doubt. *United States v. Radetsky*, 10 Cir., 535 F.2d 556, 574, *cert. denied* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 87 (Oct. 5, 1976); *United States v. Twilligear*, 10 Cir., 460 F.2d 79, 81–82. It is not the function of the appellate court to weigh conflicting evidence or to pass on the credibility of witnesses. *United States v. Brown*, 10 Cir., 541 F.2d 858, 860. Accordingly, we conclude the findings of the trial court are sufficiently supported by the testimony of Disney and reject White's claim that the court erred in refusing to accept his testimony regarding the manner and intent with which he approached Disney's car. Although it is true that there is no evidence that White expressly referred to Disney's past or future participation in the counterfeiting case and that a finding of specific intent to interfere with a witness in a pending judicial proceeding is an essential element of the offense of obstructing justice, this specific intent may be established by circumstantial evidence.

---

1. Section 1503 provides in part:

   Whoever corruptly, or by . . . force . . . endeavors to influence, intimidate, or impede any witness, in any court of the United States . . ., or injures any . . witness in his person or property on account of his attending or having attended such court . . . or on account of his testifying or having testified to any matter pending therein, . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.

■ The issue of specific intent is a factual question seldom provable by direct evidence. It may be inferred from the conduct of the defendant and the facts and circumstances surrounding the case which tend to show mental attitude and upon which reasonable inferences may be based. *E. g., United States v. Curtis,* 10 Cir., 537 F.2d 1091, 1097; *United States v. Fleming,* 10 Cir., 479 F.2d 56, 57. The natural, probable consequences of an act may thus satisfactorily evidence the state of mind accompanying it, even when specific intent is a crucial element of the offense. *United States v. Jackson,* 168 U.S.App.D.C. 198, 513 F.2d 456, 461. In the case at bar the circumstances surrounding White's actions, together with the reasonable inferences that may be drawn therefrom, were legally sufficient to support the trial court's finding of specific intent.

■ White's contention that Disney could not have been a "witness" in a pending federal prosecution at the time of the June 30 assault is likewise without merit. The essence of this contention is that since White had decided to enter a plea of guilty prior to the assault and had communicated this intent to his attorney, there was no "present prospect" that Disney would ever be called as a "witness" at the time of the assault. This argument, however, confuses the requirement that Disney be shown to have the legal status of a "witness" in a pending federal proceeding with the requirement that White be shown to have had the specific intent to intimidate a witness or to injure his person or property.

In *United States v. Griffin,* 10 Cir., 463 F.2d 177, 178, *cert. denied* 409 U.S. 988, 93 S.Ct. 34, 34 L.Ed.2d 254, we stated:

> Within the meaning of § 1503, a witness is one who knows, or is supposed to know, material facts and is expected to testify to them or to be called as a witness to so testify.

*Id.* at 179. In applying this standard to the facts of a particular case, it must be remembered that one of the primary purposes of section 1503 is to protect participants in judicial proceedings and thereby protect the public interest in the due administration of justice. *United States v. Jackson, supra* at 454.

There is no question that at the time of the assault in the present case a federal prosecution was pending against White on the counterfeiting charge. A complaint had been filed with the United States Magistrate, an arrest warrant had been issued and executed, and an indictment had been returned. There is also no question that Disney had knowledge of material facts relating to the charged offense and could be expected to testify to them. Indeed he was listed as a witness on the complaint served upon White at the time of White's arrest and without his testimony there could have been no successful prosecution for passing the counterfeit note.[2] The fact that White had subjectively determined to enter a plea of guilty because of the overwhelming evidence against him does not affect the fact that a federal proceeding was pending or that as long as it was pending there was a real prospect that Disney would be called to testify. What it does affect, if anything, is White's knowledge of Disney's status as a witness and his intent to intimidate or injure a "witness" in his person or property. White's contention that he did not possess the requisite specific intent at the time of the assault because he did not consider Disney a witness was carefully considered by the trial court and rejected as implausible under the circumstances. We have already held this finding was sufficiently supported by the evidence.

Affirmed.

---

**2.** White submits that the other evidence against him on the counterfeiting charge, *viz.,* a statement from his brother regarding White's possession of counterfeit notes and the fact counterfeit notes similar to the one passed to Disney were found on White's person at the time of his arrest, was more than sufficient to establish his guilt. This evidence does not eliminate the need for Disney's testimony that White attempted to *pass* a counterfeit note, however, nor obviate the fact that the counterfeiting prosecution was initiated upon Disney's statement to the Secret Service.