UNITED STATES of America, Plaintiff–Appellant,

v.

Gary R. WALKER, Defendant–Appellee.

No. 91–3069.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1991.

Lanny D. Welch, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), Wichita, Kan., for plaintiff-appellant.

Jerry L. Griffith, of Griffith & Griffith, Derby, Kan., for defendant-appellee.

Ann S. DuRoss, Asst. Gen. Counsel, Howard S. Feinstein, Asst. Gen. Counsel, Joan E. Smiley, Senior Counsel, Robert D. McGillicuddy, Deputy Senior Counsel, and John T. Mahshie, Atty. (on the brief), Washington, D.C., for Federal Deposit Ins. Corp., amicus curiae.

Before ANDERSON and TACHA, Circuit Judges, and CHRISTENSEN, District Judge.*

CHRISTENSEN, District Judge.

This is a direct appeal by the United States which challenges the district court's pretrial dismissal of an information charging the appellee, Gary R. Walker, with violations of 18 U.S.C. § 212.[1]

Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we reverse.

Both counts of the information[2] upon motion of the defendant were dismissed by

---

* A. Sherman Christensen, Senior Judge, United States District Court for the District of Utah, sitting by designation.

1. Section 212 in pertinent part reads:

Whoever, being an officer, director or employee of a financial institution which is a member of the Federal Reserve System, or the deposits of which are insured by the Federal Deposit Insurance Corporation ... makes or grants any loan or gratuity, to any examiner or assistant examiner who examines or has authority to examine such bank, ... shall be fined not more than $5,000 or imprisoned not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given.

2. INFORMATION

The United States Attorney charges:
COUNT I
On or about October 4, 1986, in the District of Kansas, GARY R. WALKER, defendant herein being an officer or employee, that is, President of the Sylvia State Bank, Sylvia,

the district court on the ground that the information failed to charge a violation of section 212—"Gary R. Walker did not 'make or grant any loan' within the meaning of 18 U.S.C. § 212." *United States v. Walker*, 755 F.Supp. 972, 977 (D.Kan.1991).

## THE BASIC ISSUE, RULES OF CONSTRUCTION, AND STANDARD OF REVIEW

■ Thus, the question of the sufficiency of the information as against the motion to dismiss on the ground of failure to state an offense as authorized by Fed. R.Cr.P. 12 is directly before us. Sufficiency of an indictment or information depends upon whether it contains the elements of the offense sought to be charged, apprises the defendant of the charges he must meet and affords protection against the risk of double jeopardy in the event of conviction. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States of America v. Daily*, 921 F.2d 994, 998 (10th Cir.1990) (cert. pending). In these determinations statutes are to be construed strictly, *United States v. Boston and Maine R.R.*, 380 U.S. 157, 85 S.Ct. 868, 13 L.Ed.2d 728 (1965), but the rule of strict construction does not require that they be given the narrowest meaning their wording will allow. *United States v. Cardenas*, 864 F.2d 1528, 1535 (10th Cir.1989), citing *United States v. Raynor*, 302 U.S. 540, 552, 58 S.Ct. 353, 358, 82 L.Ed. 413 (1938).

■ Of course an information must encompass possible proof that may be offered to sustain the charge. Ordinarily the details of such proof are left for trial if the sufficiency of the pleading is sustained. In the present case we are not left to speculate upon what the proof might be. At a hearing on the motion to dismiss, the Government indicated that it was prepared to prove at trial the state of facts hereinafter set out, and Walker agreed for purposes of his motion that the Government's statement was accurate. *Walker*, 755 F.Supp. at 974, n. 2. Essentially these same facts are set out in appellant's brief on appeal, eliciting a response in appellee's brief at page 2 that "[f]or purposes of the argument and motion to dismiss, I believe the statement of facts as set forth by the United States Government should be taken as true."[3] After this is said, it still must be kept in mind that we are called upon to determine only the sufficiency of the information to charge an offense and the subsumed problem of statutory construction, not necessarily the sufficiency of the evidence, *per se*. While in light of the points and arguments before us both present essentially the same question of law, we do not assume to pass upon the facts submitted to us here for any other purpose.

■ We review statutory interpretations *de novo*, as we do the sufficiency of an information grounded on a statute. *See United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir.1990); *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir.1991).

Kansas, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation, knowingly made or granted a loan to Frank Waitt, a bank examiner for the State of Kansas who examined or had the authority to examine the Sylvia State Bank, in that he obtained a loan in the amount of $10,000.00 for Frank Waitt from F.J. Farmer, a customer of the Sylvia State Bank, in violation of 18 U.S.C. 212.

#### COUNT II

On or about November 5, 1987, in the District of Kansas, GARY R. WALKER, defendant herein, being an officer or employee, that is, President of the Sylvia State Bank, Sylvia, Kansas, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation, knowingly made or granted

a loan to Rebecca H. Emery, a bank examiner for the State of Kansas who examined or had the authority to examine the Sylvia State Bank, in that he obtained a loan in the amount of $7,000.00 for Rebecca H. Emery from F.J. Farmer, a customer of the Sylvia State Bank, in violation of 18 U.S.C. 212.

3. Appellee observed, however, that the Government's recitation "takes a great deal of liberty with the facts as they have been set forth in the pleadings and statements of the parties and argument in that in both instances Walker agreed to see if Farmer would loan them the money. He did not agree to obtain money for them." We do not deem this qualification of controlling significance.

## STATEMENT OF FACTS

Gary R. Walker was president of the Sylvia State Bank in Sylvia, Kansas, from 1974 until approximately September 8, 1988, when the bank was declared insolvent and the Federal Deposit Insurance Corporation was appointed as receiver. Frederick James Farmer, Jr., was a customer of the Sylvia State Bank prior to 1986 and continued doing business with the Sylvia State Bank until September 8, 1988.

Frank R. Waitt was an examiner for the State of Kansas Department of Banking and was the individual in charge of the Wichita field office which included the Sylvia State Bank as a bank situated within the territory covered by the field office. Frank Waitt was authorized to examine and, in fact, served as the examiner-in-charge of the Sylvia State Bank's last two examinations on October 15, 1985, and April 14, 1987.

Prior to October 4, 1986, Frank Waitt contacted Gary Walker and inquired of him if he knew where he could borrow some money. At the time of the solicitation, Walker considered Waitt to be a good friend, and knew that he was a state bank examiner who had previously examined the Sylvia State Bank. Thereafter, Walker contacted F.J. Farmer and arranged for Farmer to lend money to Frank Waitt. Although he never met Frank Waitt nor was aware of his occupation, Farmer agreed to loan money to him.

On or about October 4, 1986, Waitt met Gary Walker at the Sylvia State Bank and executed an unsecured note to Farmer in the principal amount of $10,000 with interest at thirteen percent payable at the rate of $400 monthly. The loan was funded from Farmer's deposit account. Loan documents similar to those prepared for every loan at the Sylvia State Bank were created and remained at the Sylvia State Bank. The bank served as escrow agent for the payments and the bank received a $.50 payment handling fee. Prior to receiving the loan, Waitt provided Gary Walker with a personal financial statement dated September 28, 1986, in which he clearly revealed that he was a senior examiner for the state banking department with thirty-six years of experience. In addition to never meeting Frank Waitt, Farmer indicated he never saw any of the loan documents or the financial statement prepared by Frank Waitt.

Frank Waitt served as the state's examiner-in-charge of the April 14, 1987, examination of the Sylvia State Bank. The examination commenced on April 15, 1987, and concluded on April 22, 1987. Waitt assigned a uniform bank rating of 2-2-2-3-½. The examination report prepared by Waitt reflected only modest classifications and there were no violations of law, rules or regulations or concentrations of credit scheduled. The official officer's questionnaire signed by Gary Walker on April 16, 1987, reflected an answer of "none" to the question "list all extensions of credit held by a bank which are direct or indirect liabilities of any bank examiner or assistant examiner who examines or has authority to examine this bank." As stated previously, the Sylvia State Bank was declared insolvent some seventeen months later in September of 1988.

Prior to November 5, 1987, Rebecca Emery arrived at the Sylvia State Bank and discussed her need for a loan with Gary Walker. Just as he did in the case of Frank Waitt, Walker agreed to obtain money for Rebecca Emery. He once again contacted F.J. Farmer and Farmer agreed to loan Emery $7,000. At the time of the solicitation, Karen Walker, Walker's wife and an employee of the Sylvia State Bank, considered Emery to be a good friend and she and Gary Walker were aware that Rebecca Emery was a state bank examiner who had previously participated in an examination of the Sylvia State Bank. Tr. Vol. I at 6.

Once again, Farmer did not meet Emery nor was he made aware of her occupation. Emery executed an unsecured promissory note dated November 5, 1987, in the amount of $7,000 with interest at thirteen percent. Payments were scheduled at $235 per month with a final maturity of November 5, 1990. Funding for the loan came from Farmer's deposit account at the Syl-

via State Bank. Incidental therewith, an unsigned loan application form was completed which clearly showed that Emery was a state bank examiner and her supervisor was Frank Waitt. As Walker had done with the loan to Frank Waitt, all loan documentation was kept at the Sylvia State Bank and the bank served as the escrow agent for the payments and received a $1 per payment handling fee. In addition to not meeting Rebecca Emery, Farmer never saw any of the documents in relation to this loan.

## THE MEANING OF THE STATUTE IN CONSIDERATION OF ITS WORDING AND IN LIGHT OF ITS PURPOSE

■ It is our opinion that the meaning of the statute does not preclude, but on the contrary literally encompasses, the pleaded and agreed state of facts as sufficient, and especially is this so in light of the obvious purpose of the statute.

The primary elements comprising an offense under the statute are:

(1) The FDIC has insured the deposits of the bank.

(2) The defendant was an officer, director or employee of the bank.

(3) He made or granted a loan to an examiner or assistant examiner who examines or has authority to examine such bank.

Defendant does not question that these elements are present in this case, except for the "making or granting" of the loans by the bank officer.

*Literal Meaning of Controlling Terms.*

Among the numerous meanings of "make" are "to cause to exist, occur, or appear"; "to cause to be or become"; "to put in a certain state or condition." Webster's New International Dictionary, Third Edition (Unabridged) (1976). Or, as the Random House College Dictionary, Revised Edition (1980), says "to bring into existence by shaping or changing material, combining parts, etc.: to make a dress; to make a chair; to make a work of art"; "produce; cause to exist; bring about: to make trouble; to make war"; "to cause to be or become; render: to make someone happy";

"to put in the proper condition or state, as for use; fix; prepare: to make a meal"; or "to bring into a certain form: to make bricks out of clay." On the other hand, the meaning of "grant," among others is to "agree, assent"; or "give, bestow, confer." Webster's New International Dictionary, Third Edition (Unabridged) (1976). In *United States v. Giles,* 300 U.S. 41, 48, 57 S.Ct. 340, 344, 81 L.Ed. 493 (1937), the Supreme Court observed that the word "make" has many meanings, among them "[t]o cause to exist, appear or occur."

■ In determining the scope and meaning of a statute, we first look at its language. "[Words] should be given their fair meaning in accord with the evident intent of Congress." *Id.* at 48–49, 57 S.Ct. at 344. *See also U.S. v. Brian N.,* 900 F.2d at 220.

In describing the offense charged, the statute significantly omits any reference to the source of the loan; there is no requirement that it be made by a bank, much less by the particular bank of which the defendant is an officer. Hence, the fact that a loan is made by the officer to a bank examiner from another bank or a private individual on the face of the statute does not seem inconsistent with criminal liability on the part of the bank officer who "makes" the loan. Had Congress chosen to use in context only the word "grant," the result could have been different. But it added the word "make" with its much broader meaning, as it rationally should have done to fully serve the purpose of the statute. Nor would its purpose be served by so narrowly framing or construing the statute as to invite frustration or circumvention by an officer's making of a loan as a favor to a bank examiner through the officer's friend or business associate under circumstances disclosed here.

*The Purpose of the Statute.*

The obvious purpose of the statute is to proscribe the granting of favors by a bank officer through loans to a bank examiner which could impair the independence or integrity of bank examinations. These could be influenced just as well by a loan arranged for him through another bank, fi-

nancial institution, or individual with whom the officer could achieve the result sought by the bank examiner—a loan of money with the aid of the bank officer—as through a loan from the officer's own bank.

With the intent of Congress evident from the face of the statute, a construction which would allow a bank officer to circumvent that intent simply by making and channeling the loan through another entity is untenable. *United States v. Bristol,* 473 F.2d 439, 442 (5th Cir.1973).

> Congress, in passing Section 213 and its companion section 212 (which prohibits bank officers from making a section 213 loan), intended to proscribe certain financial transactions which could lead to a bank examiner carrying out his duties with less than total, unbiased objectivity. With the intent of Congress evident from the face of the statute, a construction which would allow a bank officer to circumvent that intent simply by channeling a loan through a controlled shell corporation is untenable.

*Bristol,* 473 F.2d at 442.

The lower court in discussing the intent of Congress when enacting 18 U.S.C. §§ 212 and 213 had said:

> ... Congress has enacted a banking statute which contains stringent regulations enforced by both civil and criminal sanctions. The ultimate purpose of the criminal provisions is to protect innocent depositors by deterring bank officials from engaging in willful mismanagement and for engaging in culpable personal transactions to the detriment of the solvency and well being of the bank. One area of regulation which provides for criminal penalties is that precluding bank officers from offering a loan or gratuity to a bank examiner as well as the correlative transaction, the acceptance of a loan or gratuity by a bank examiner to make

favorable reports on the financial conditions of a bank.

*United States v. Bristol,* 343 F.Supp. 1262, 1263 (S.D.Tex.1972).

*Bristol Should be Followed.*

We find *Bristol* persuasively in point. While that case involved the prosecution of a bank examiner under a companion section,[4] the reasoning and principles discussed there are on the mark here.

The defendant in *Bristol* was a bank examiner who had accepted a loan held to be in violation of 18 U.S.C. § 213. His primary defense was that the indictment was fatally defective because the loan, although perhaps arranged by a bank officer, was not "made" or "granted" by him or his bank, but instead was made by a legitimate non-banking corporation. Affirming the jury verdict and judgment of conviction in the district court, the Fifth Circuit recognized that penal statutes are to be strictly construed but are not required to be "strained or distorted in order to exclude conduct clearly intended to be within [their] scope," citing *Ryan v. United States,* 278 F.2d 836, 838 (9th Cir.1960).

Here, as in *Bristol,* the bank official channeled funds to examiners through another entity in making the proscribed loans. That entity, as aptly characterized by the *amicus curiae,* instead of being a shell corporation, "was a pliant bank customer, who allowed Walker to use the funds in his deposit account for the loans, without ever having met the examiners, without ever having seen the examiners' financial statements before loaning them money and without ever receiving a copy of the loan documents." Br. of *amicus curiae* at 8.

The district court in the present case recognized that *Bristol* could be generally viewed as supportive of the Government's position, but held that the facts of that case were distinguishable from the case at bar:

---

**4.** 18 U.S.C. § 213 makes it a crime for a bank examiner to accept a loan or gratuity from any bank examined by him or any person connected therewith.

    In *U.S. v. Waitt,* 761 F.Supp. 108 (D.Kan. 1991), one of the bank examiners involved in

the present case was prosecuted under § 213, and the district judge dismissed the information on the same theory he followed in the present case.

In *Bristol,* the loan was channeled through a controlled shell corporation. Stripped of its corporate facade, the loan was made or granted by a bank officer; the money was controlled by the bank officer. If the facts of the case at bar were similar, the court might be persuaded to pierce through the corporate shell and to find a violation of the statute [citation omitted].

755 F.Supp. at 977. The district court concluded that the facts of this case are significantly different. "While it is true that Walker arranged the loans, he did not 'make or grant' the loans." *Id.* We do not agree.

## CONCLUSION

Because of the breadth of the decisive words chosen by Congress and incorporated in the information the meaning of which literally encompasses the defendant's undisputed conduct, the absence of any requirement in the statute that the bank itself grant or make the loan, and the purpose of the statute to proscribe such threats to the independence of bank examiners perceivable here, we conclude that the information sufficiently charged, and the recited facts demonstrate, the granting and making by the defendant of a loan to a bank examiner in violation of 18 U.S.C. § 212. We therefore reverse the order and judgment appealed from and remand the case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.