**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Paul D. WOOD, Defendant–Appellee.**

**No. 92–2172.**

United States Court of Appeals, Tenth Circuit.

Sept. 23, 1993.

Richard A. Friedman, Atty., Appellate Section, Criminal Div., Dept. of Justice, Washington, DC (Don J. Svet, U.S. Atty., and Wallace H. Kleindienst, Sp. Asst. U.S. Atty., Albuquerque, NM, with him on the briefs), for plaintiff-appellant.

David L. Norvell of The Norvell Law Firm, Albuquerque, NM, for defendant-appellee.

Before McKAY, Chief Judge, LOGAN and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

The government appeals the district court's dismissal of the indictment against defendant Paul D. Wood for failure to state a punishable offense. We have jurisdiction pursuant to 18 U.S.C. § 3731.

I

In 1989 the FBI and a federal grand jury in Phoenix, Arizona were investigating allegations of political corruption involving Peter MacDonald, Sr., Chairman of the Navajo Nation of Indians. Defendant is the general manager of a construction company that had done a significant amount of business with the Navajo Nation, and FBI agents interviewed him in his office about his dealings with MacDonald. During the course of the meeting, the government alleges that defendant made several false or misleading statements relating to an automobile that MacDonald had borrowed from defendant. Defendant was subsequently charged with making false statements to an FBI agent, in violation of 18 U.S.C. § 1001, and with obstruction of justice, in violation of 18 U.S.C. § 1503.

On remand from a prior appeal,[1] defendant moved to dismiss the indictment for failure to state a criminal offense. The district court held that because the FBI agents were acting under the auspices of the Phoenix grand jury, their discussion with defendant was part of a judicial proceeding, thereby falling within the "judicial function" exemption to liability for false statements under § 1001. As to the § 1503 charge, the court ruled that defendant's unsworn false statements would not as a natural and probable consequence impede the due administration of justice. The court also noted a number of policy reasons why § 1503 should not apply to statements of the nature given by defendant, and therefore dismissed that charge as well. The government now appeals these dismissals.

## II

■■■■ As a general rule, "[i]n reviewing a trial court's order granting or denying a motion to dismiss an indictment, the appellate court can only reverse if the lower court abused its discretion." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir.1988). However, if, as here, the court dismisses the indictment based on its interpretation of the governing statutes, that is a legal determination we review de novo. *Tramp v. United States*, 978 F.2d 1055, 1055 (8th Cir.1992).

Because the district court dismissed the case before retrial, for purposes of review we accept as true the government's allegations made in the indictment. *United States v. Barker Steel Co.*, 985 F.2d 1123, 1125 (1st Cir.1993). According to the government, the FBI agents asked defendant to explain the circumstances surrounding his lending of a car to MacDonald. Defendant answered that he had recently purchased the car for his daughter, but that MacDonald had asked to borrow it to drive from Albuquerque to Window Rock, Arizona. Defendant stated that

at the time he loaned the car to MacDonald it had approximately 1200 miles on it. Defendant told the agents that he had expected to receive the car back within a few days, but that eventually he had to fly to Flagstaff, Arizona, to retrieve it three weeks later. He said that the car at that time had 2500 miles on the odometer, and that he returned with it to Albuquerque.

The government alleges that defendant in fact purchased the car intending to give it to MacDonald, not to his daughter, and that the car had only 150 miles on it when MacDonald took possession. Further, MacDonald allegedly retained the car for eight weeks, not three, and when defendant retook possession he did not return to Albuquerque, but instead disposed of the car in Las Vegas, Nevada. The government contends that it did not pursue this aspect of the investigation after talking to defendant, and charged him with false statements and obstruction of justice after learning the truth about the car.

The district court ruled that defendant's statements could not be prosecuted under 18 U.S.C. § 1001 because of the "judicial function" exception we recognized in *United States v. Deffenbaugh Industries, Inc.*, 957 F.2d 749, 752 (10th Cir.1992). Section 1001 provides, in pertinent part: "Whoever, in any matter within the jurisdiction of any department or agency of the United States ... makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both." Read literally, this section "would swallow up perjury statutes and a plethora of other federal statutes proscribing the making of false representations in respect of specific agencies and activities of Government. Extension of section 1001 to its literal breadth, however, cannot be justified by its legislative history." *United States v. Bedore*, 455 F.2d 1109, 1110 (9th Cir.1972) (footnote omitted).[2] "Most cir-

---

**1.** At a first trial the district court dismissed the obstruction of justice charge, and the jury found defendant guilty on the false statement count. The district court ordered a new trial on that charge because some of the prosecution's notes were found in the jury room. On appeal, this court ruled that the obstruction of justice charge was erroneously dismissed, and ordered a new

trial on both counts. *United States v. Wood*, 958 F.2d 963 (10th Cir.1992). We left open, however, the issues before us in the present appeal. *See id.* at 975 n. 19.

**2.** *See also United States v. Levin*, 133 F.Supp. 88 (D.Colo.1953):

cuits have recognized a 'judicial function' exception to the application of § 1001, based on a finding that a court is not a 'department or agency'...." *Deffenbaugh*, 957 F.2d at 752. Under this exception, false statements made to a court in a judicial proceeding are not covered by § 1001. Since the exception was first suggested in 1962, "there has been no response on the part of Congress either repudiating the limitation or refining it. It therefore seems too late in the day to hold that no exception exists." *United States v. Mayer*, 775 F.2d 1387, 1390 (9th Cir.1985).[3]

■ The district court ruled that the FBI agents who interviewed defendant were acting under the authority of the Phoenix grand jury. Although the government argues that the agents were also acting in their independent investigatory capacity, we note that the indictment specifically states that the agents interviewed defendant "in furtherance of an investigation by the United States Grand Jury sitting in Phoenix, Arizona." Also it is undisputed that at the end of the interview the agents served a subpoena duces tecum on defendant's business seeking records for that grand jury. This fact may be considered. *See United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir.1991) ("[I]t is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case."). It supports the district court's ruling that the agents were working on behalf of the grand jury. "[G]rand jury investigations are criminal proceedings that are a part of the judicial process." *Deffenbaugh*, 957 F.2d at 752–53. Thus, because defendant's statements were made in connection with a judicial proceeding, they are exempt from prosecution pursuant to the "judicial function" exception. *See also United States v. Masterpol*, 940 F.2d 760, 766 (2d Cir.1991); *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979).

### III

Defendant was also charged with obstruction of justice, in violation of 18 U.S.C. § 1503. That section prohibits a number of specific acts relating to jurors and judicial officers, and also contains an "omnibus" clause: "Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

> There are three core elements that the government must establish to prove a violation of the omnibus clause of section 1503: (1) there must be a pending judicial proceeding; (2) the defendant must have knowledge or notice of the pending proceeding; and (3) the defendant must have acted corruptly with the specific intent to obstruct or impede the proceeding in its due administration of justice.

*United States v. Williams*, 874 F.2d 968, 977 (5th Cir.1989). Further, although the defendant need not succeed in his attempt to obstruct justice, his conduct must be such "that its natural and probable effect would be the interference with the due administration of justice." *United States v. Thomas*, 916 F.2d 647, 651 (11th Cir.1990). The government argues vigorously against adoption of the "natural and probable effect" require-

---

Any person who failed to tell the truth to the myriad of government investigators and representatives about any matter, regardless of how trivial, whether civil or criminal, which was within the jurisdiction of a department or agency of the United States, would be guilty of a crime punishable with greater severity than that of perjury.... An inquiry might be made of any citizen concerning criminal cases of a minor nature, or even of civil matters of little consequence, and if he wilfully falsified his statements, it would be a violation of this statute. It is inconceivable that Congress had any such intent when this portion of the statute was enacted. A literal construction of a statute is not to be resorted to when it would bring about absurd consequences, or flagrant injustices, or produce results not intended by Congress.

*Id.* at 90.

3. In *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), the Supreme Court noted the development of the exception, but expressed "no opinion on the validity of this line of cases." *Id.* at 483 n. 4, 104 S.Ct. at 1948 n. 4.

ment of *Thomas.* This element is necessary, however, because particular acts, "although arguably interfering with some aspect of the administration of justice, may be beyond the scope of § 1503 because the nexus to the progress of a judicial proceeding is too attenuated and the statutory construction therefore too strained." *United States v. Walasek,* 527 F.2d 676, 679 (3d Cir.1975).[4]

■ Here, a grand jury proceeding was under way and the agents informed defendant of its pendency at the outset of the interview. A grand jury investigation qualifies as a "pending judicial proceeding" for purposes of the statute. *United States v. Wood,* 958 F.2d 963, 975 n. 18 (10th Cir.1992). Given this case's procedural posture, we must conclude that the government would be able to prove that defendant acted with specific intent to impede the due administration of justice.[5] The only remaining issue is whether defendant's statements had the natural and probable effect of impeding the grand jury investigation.

When this case was before this court a year ago, we stated that "we have not found one reported case where a person was charged with, much less convicted of, obstructing justice based on unsworn false statements to FBI agents investigating on behalf of a grand jury." *Id.* at 976 n. 19. The government now cites a number of situations in which unsworn false statements were in fact prosecuted. They all involve a type of active deception that is significantly distinguishable from the exculpatory explanations provided by defendant in the instant case. In *United States v. Haldeman,* 559 F.2d 31 (D.C.Cir.1976) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), defendants were charged with using the CIA to obstruct the FBI investigation into the Watergate break-in. This case of

massive deception and abuse of power is clearly distinguishable from the exculpatory explanation provided by the defendant before us. We cannot equate the loaning of an automobile with the most infamous political scandal in our nation's history. In *United States v. Hawkins,* 765 F.2d 1482 (11th Cir. 1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986), and *United States v. Perkins,* 748 F.2d 1519 (11th Cir. 1984), the defendants conspired to prevent the FBI from learning that an account in their savings and loan was assigned to a fictitious person. They arranged for a third party to pose as that person, in the hopes of eventually receiving federal insurance money for the account. *See also United States v. Barber,* 881 F.2d 345, 351 (7th Cir.1989) (defendant sent false letters of recommendation to sentencing judge in support of another person), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990); *United States v. Nelson,* 852 F.2d 706, 711 (3d Cir.) (defendants fabricated or modified documents), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *United States v. Vesich,* 724 F.2d 451, 457 (5th Cir.1984) (defendant attempted to influence testimony of prospective grand jury witness); *United States v. Shoup,* 608 F.2d 950, 962 (3d Cir.1979) (defendant conspired with city councilman to submit false report concerning voting machine fraud).

■ We find it difficult to believe that the FBI agents would terminate their investigation based on the self-serving exculpatory explanation offered by defendant. If the agents had reason to believe that defendant was a participant in MacDonald's political corruption, they would not expect a full confession in the context of an unsworn interview. That the investigation eventually re-

---

4. Although the government contends that the *Thomas* court misread its own Eleventh Circuit law, if anything, the "natural and probable effect" test is less demanding than that enunciated in an earlier case from the circuit. In *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984), the court stated that "[w]hen false statements form the basis of the alleged obstruction, ... the government must prove that the statements had the effect of impeding justice." *Id.* at 1528. This "actual effect" standard would place a more

onerous burden of proof on the government than does the more speculative "probable effect" test.

5. There appears to be no clear definition for the phrase "due administration of justice." One court concluded that it "refers to the performance of acts required by law in the discharge of duties such as appearing as a witness and giving truthful testimony when subpoenaed." *Williams,* 874 F.2d at 976 n. 24 (quotation omitted).

vealed what the government claims is the truth about the car is evidence that they did not rely exclusively on defendant's statements. We conclude that defendant's unsworn exculpatory statements given in his own office to interviewing FBI agents did not have the natural and probable effect of impeding the due administration of justice in the sense required by 18 U.S.C. § 1503, and a prosecution under that section is therefore barred.

AFFIRMED.

TACHA, Circuit Judge, dissenting.

In this appeal, we address Paul Wood's challenge to the sufficiency of his indictment. A criminal indictment must safeguard two constitutional guarantees: "the Sixth Amendment right to be informed of the nature and cause of the accusation in order to prepare a defense; and the Fifth Amendment protection against twice being placed in jeopardy for the identical offense." *United States v. Russo*, 527 F.2d 1051, 1058 (10th Cir.1975) (internal quotations omitted), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976). An indictment conforms to these minimal constitutional standards when it (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what she must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Walker*, 947 F.2d 1439, 1441 (10th Cir.1991).

After applying this test to the indictment before us, the majority affirms the district court's conclusion that both counts of the indictment should be dismissed because they fail to state the essential elements of the offenses intended to be charged. Because I cannot agree with the majority's standard of review, its method of reading the indictment, or its construction of the relevant criminal statutes, I respectfully dissent.

## I. STANDARD OF REVIEW

We review the dismissal of an indictment for failure to state a punishable offense de novo. *See, e.g., United States v. Levine*, 970 F.2d 681, 685 (10th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992); *United States v. Wood*, 958 F.2d 963, 974 (10th Cir.1992). This standard means that we are not bound by the district court's interpretation of the charging statute. *Walker*, 947 F.2d at 1441. Moreover, we must accept the allegations in the indictment as true, showing no deference to the district court's construction of those allegations. *United States v. Barker Steel Co.*, 985 F.2d 1123, 1125 & n. 2 (1st Cir.1993). Although we read the indictment as a whole, *see Russo*, 527 F.2d at 1058, because each count of an indictment is regarded as a separate indictment, the sufficiency of a particular count depends solely on the allegations contained in that count, absent express language of incorporation, *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir.1992); *see also Gainey v. United States*, 318 F.2d 795, 797 (10th Cir.1963).

In affirming the district court's dismissal of the indictments, the majority relies on the district court's finding that the FBI agents were working on behalf of the grand jury in a matter outside the FBI's jurisdiction. Relying on this finding is improper, however, because we must accept as true all of the factual allegations found in the indictment. In a criminal jury trial the district court has no fact finding role with regard to the general issue of guilt or innocence. Rather, the jury has the responsibility to determine whether the "matter" at issue was, *in fact*, "within the jurisdiction" of the FBI. *See United States v. Knox*, 396 U.S. 77, 83–84 & n. 7, 90 S.Ct. 363, 367 & n. 7, 24 L.Ed.2d 275 (1969) (question whether false statement was made willfully, as is required by § 1001, was part of the "general issue" to be resolved at trial and not on pretrial Rule 12(b) motion); *United States v. King*, 581 F.2d 800, 802 (10th Cir.1978) ("The matter raised by appellees' motion was not 'capable of determination without the trial of the general issue.' It was the general issue. Until the matter is put to trial before the *trier of fact*, the dis-

trict court has no jurisdiction to decide a defendant's innocence or guilt.") (emphasis added). Thus, because the district court had no fact finding role, the majority improperly relies on the district court's finding that the FBI agents were acting on behalf of the grand jury.

The majority compounds its error by relying on extrinsic evidence that the FBI agents served a subpoena duces tecum on Wood at the conclusion of the interview. It is well established that the sufficiency of an indictment rests solely on the allegations made *on its face. See, e.g., United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 175, 9 L.Ed.2d 136 (1962); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *King,* 581 F.2d at 802 (holding that evidence outside the indictment "is irrelevant to a determination of whether the indictment itself is legally sufficient") (internal quotations omitted); *United States v. Gallagher,* 602 F.2d 1139, 1142 (3d Cir. 1979) (holding that, on remand, a trial court may not consider testimony presented at the first trial in testing the sufficiency of the indictment), *cert. dismissed,* 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675, *and cert. denied,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980). Thus, at this stage of the proceedings, our role is to determine whether the factual allegations of the indictment, taken as true, are sufficient by themselves to state a punishable offense. Wood can only challenge the sufficiency of the government's case with extrinsic evidence *after* the government has presented its case at his second trial, at which time Wood may move for judgment of acquittal pursuant to Fed. R.Crim.P. 29. At that time, the trial court may decide whether, *as a matter of law,* the evidence presented by the government is sufficient to establish the essential factual elements of guilt beyond a reasonable doubt.

## II. FALSE STATEMENTS UNDER 18 U.S.C. § 1001

The false statements statute, 18 U.S.C. § 1001, punishes "[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations." 18 U.S.C. § 1001. Relying on the judicial function exception recognized by this court in *United States v. Deffenbaugh Indus., Inc.,* 957 F.2d 749, 752–53 (10th Cir.1992), the district court concluded that the FBI agents did not exercise their independent investigative authority when they interviewed Wood, but instead exercised the authority of the grand jury, which is not a "department or agency of the United States." Applying the proper standard of review as outlined above, I conclude that the district court erred.

As a matter of law, Count I of the indictment sufficiently alleges that the interview during which Wood lied to the FBI agents was within the jurisdiction of an agency or department of the United States. Count I provides:

> On or about May 22, 1989, within the State and District of New Mexico, defendant PAUL D. WOOD, did knowingly and willfully make false, fictitious and fraudulent statements and representations as to material facts to Special Agents Michael Pullano, Linda Bateman and George Black of the Federal Bureau of Investigation, *in a matter within the jurisdiction of the United States Department of Justice, an agency and department of the United States....*

(emphasis added).[1] Although the allegation of agency jurisdiction tracks the statutory language, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (internal quotations omitted); *see also Wood,* 958 F.2d at 974. I conclude that the statutory language regarding agency jurisdiction sufficiently safeguards Wood's Fifth and Sixth Amendment rights.

---

1. The remainder of Count I alleges with particularity the false statements Wood made to the FBI agents, and the true facts as known to Wood at the time.

Indeed, the majority does not conclude that Count I, on its face, fails to state the essential element of agency jurisdiction. Instead, it reasons that the allegation that the FBI was acting "in furtherance of an investigation" by a grand jury, which appears only in *Count II* of the indictment, somehow renders *Count I*'s allegation of agency jurisdiction insufficient. The majority errs, however, because the sufficiency of Count I, which does not expressly incorporate the allegations of Count II, depends solely on the allegations contained in that count.

Even if it were proper to tax the "grand jury" allegation in Count II against the "agency jurisdiction" allegation in Count I, these two allegations are not inconsistent. The FBI, like any police agency, has at least two goals when it investigates a crime: first, it seeks to apprehend the offenders, and second, it seeks to gather enough evidence for the prosecution to sustain a conviction in any future trial. Because, absent waiver, a citizen cannot be prosecuted in federal court unless a grand jury indicts him, the FBI also necessarily seeks to obtain on the government's behalf sufficient evidence to sustain a grand jury finding of probable cause to indict. In my judgment, these related activities of the FBI all fall within the statutory authority of the FBI to "detect and prosecute crimes," and thus are matters within the jurisdiction of the FBI. *See United States v. Rodgers*, 466 U.S. 475, 481, 104 S.Ct. 1942, 1947, 80 L.Ed.2d 492 (1984) (citing 28 U.S.C. § 533(1)). Construing the phrase "in furtherance of [a grand jury] investigation" in the light most favorable to the government, I conclude that the phrase states only that the FBI would present any evidence it obtained to the grand jury, not that it was actually exercising the grand jury's authority.

The majority's contrary conclusion departs from the rationale of our decision in *Deffenbaugh*. In that case, we held that the Department of Justice had *no statutory author-*

*ity* to require the defendant to submit an affidavit of compliance when he presented his response to a federal grand jury subpoena duces tecum to the Antitrust Division rather than directly to the grand jury. *Deffenbaugh*, 957 F.2d at 753. Because the power to issue subpoenas rests exclusively with the grand jury, we reasoned that, to the extent that the Department of Justice officials were exercising any authority, that authority flowed from the grand jury. *Id.* Since the grand jury is part of the judicial process, we concluded, the Department of Justice officials were not acting on a matter within the jurisdiction of a department or agency. *See id.* at 752–53.

In this case, however, nothing in the indictment suggests that the FBI agents were exercising the grand jury's unique subpoena power when they interviewed Wood. By holding otherwise, the majority makes it impossible for the government to obtain sufficient indictments or sustain convictions against defendants who make false statements to FBI agents during the pendency of grand jury investigations, since any FBI investigation is at that point at least partly in furtherance of the grand jury investigation. I cannot believe that Congress intended this result when it passed § 1001. Thus, although I agree that it is too late in the day to hold that no judicial function exception exists, in my judgment, the majority stretches the exception beyond its proper boundaries.[2]

## III. OBSTRUCTION OF JUSTICE UNDER 18 U.S.C. § 1503

Count II of the indictment charges Wood with a violation of the "omnibus clause" of the obstruction of justice statute, 18 U.S.C. § 1503. As we held in the last appeal, that clause contains four essential elements: (1) a pending judicial proceeding, (2) defendant's knowledge of the proceeding, (3) defendant's specific intent to impede the proceeding, and (4) conduct which impedes or constitutes an

---

**2.** Although the majority also warns that § 1001, read literally, "would swallow up the perjury statutes," there is no danger of that happening in this case because Wood's statements were unsworn. *Cf. Deffenbaugh*, 957 F.2d at 752 (noting that defendant's false statements were contained in a signed affidavit of compliance). Moreover, the majority's reasoning in footnote 2 that Congress could not have intended harsher punishment for trivial misrepresentations than for perjurious statements has been expressly rejected by the Supreme Court. *See Rodgers*, 466 U.S. at 482–83, 104 S.Ct. at 1948.

endeavor to impede the proceeding. *See Wood*, 958 F.2d at 975. Today, for the first time, the majority adds a fifth element—the conduct must be such "that its natural and probable effect would be the interference with the due administration of justice"—and then holds that Count II of the indictment should be dismissed because it fails to allege this new essential element. Although it is a close question, I also disagree with this conclusion.

In deciding to add this new fifth element, the majority follows the lead of the Eleventh Circuit's decision in *United States v. Thomas*, 916 F.2d 647 (11th Cir.1990). Although I agree that some version of this limiting element is necessary because in some instances the nexus between particular acts and "the progress of a judicial proceeding is too attenuated and the statutory construction therefore too strained," *see United States v. Walasek*, 527 F.2d 676, 679 (3d Cir.1975), I believe that the *Thomas* court and the majority overstate the required nexus. Many of the earlier cases from other circuits defining "endeavor to impede justice" state the required nexus in terms of possibility rather than probability. For example, in *United States v. Brand*, 775 F.2d 1460 (11th Cir.1985), the court stated that § 1503 proscribes conduct "which produces or *which is capable of producing an effect* that prevents justice from being duly administered." *Id.* at 1465; *see also Cole v. United States*, 329 F.2d 437, 439 (9th Cir.) (same), *cert. denied*, 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). Although we must read § 1503 strictly in favor of the accused, we cannot define the required nexus too narrowly without running afoul of the Supreme Court's definition of "endeavor" under an earlier codification of the obstruction statute as "*any* effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." *United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). I would therefore define "endeavor to impede justice" as any conduct which is *capable* of impeding the due administration of justice.[3] Moreover, like the *Thomas* court, but unlike the majority, I

would treat this definition of the proper nexus not as a separate essential element of the offense, but as an explanation of the element of an "endeavor to impede justice." *See Thomas*, 916 F.2d at 651.

With this definition in mind, I conclude that Count II of the indictment sufficiently alleges an endeavor to impede justice. The count alleges that Wood "did endeavor to ... impede the due administration of justice" by lying to the FBI agents "in order to prevent [the grand jury] from learning the true facts and purpose concerning PAUL D. WOOD'S conveyance of a 1988 red Nissan Pulsar automobile to Peter MacDonald in August, 1988." This language adequately apprises Wood of the charge against him for purposes of the Fifth and Sixth Amendment. Notwithstanding the fact that the majority finds it "difficult to believe that the FBI agents would terminate their investigation based on the self-serving exculpatory explanation offered by defendant," the indictment alleges conduct by Wood which a rational jury could conclude beyond a reasonable doubt was capable of diverting the grand jury from its investigation. The fact that the government *eventually* learned the true facts does not preclude the reasonable implication that its discovery could have been *delayed* by Wood's tactics. *See United States v. Griffin*, 589 F.2d 200, 204 (5th Cir.) (stating that a perjurious grand jury witness can impede justice by "*delaying* the punishment of the guilty."), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979). Thus, I conclude that Count II of the indictment sufficiently states an offense under § 1503.

For these reasons, I respectfully dissent.

---

3. That a particular act had the "natural and probable effect" of impeding justice would remain relevant to the question whether the defendant had the requisite specific intent to impede justice. *See United States v. White*, 557 F.2d 233, 236 (10th Cir.1977).